IRTEZ DWIGHT McKEE

THERE IS NO OTHER PENDING OR RESOLVED
[illegible] ARISING OUT OF THE TRANSACTION
OR OCCURENCE ALLEDGED IN COMPLAINT

37

AYNE COUNTY
AYNE COUNTY SHERIFF
PHEAL WASHINGTON(INDIVIDUAL & OFFICIAL CAPACITIES)
AYNE COUNTY CHEIF
F JAILS ROBERT DUNLAP(INDIVIDUAL & OFFICIAL CAPACITIES)
WCSO CAPTAINS(INDIVIDUAL & OFFICIAL CAPACITIES)
LYNCH, FADLALLAH &
UNKNOW CAPTAIN #1
WCSO SERGEANTS(INDIVIDUAL CAPACITIES)
HOLMAN, LOFTIS, ANDREWS,
DYERS, SHELBY, DENNIS & CARLSON
WCSO(INDIVIDUAL CAPACITIES) CORPORALS
DE BONO, UNKNOWN CORPORALS #1 & #2
WCSO LIEUTENANT(INDIVIDUAL & OFFICIAL CAPACITIES)
LYNCH WCSO DEPUTIES(INDIVIDUAL CAPACITIES)
ALLEN, AL-WOSARI, ACERO, HORTON,
BENDERS, LAMB, HULL, PIVA, CALDWELL,
MOODY, MARTINEZ, COX, THOMAS, NUTALL &
UNKNOWN DEPUTIES #'S 1-6
WCSO SOCIAL WORKERS(OFFICIAL CAPACITIES)
FULLER & WADE
MENTAL HEALTH DIRECTOR(OFFICIAL CAPACITY)
NAPHCARE NURSES(INDIVIDUAL & OFFICIAL CAPACITIES)
CHARGE NURSE LOHING &
NURSE MORTON WCSO
HEARINGS INVESTIGATOR(INDIVIDUAL CAPACITY)
WCSO INTERNAL AFFAIRS

Case: 2:25-cv-10228
Assigned To : Edmunds, Nancy G.
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 1/24/2025
Description: PRIS. MCKEE V. WAYNE COUNTY ET AL(AB)

POOR QUALITY ORIGINAL

STATEMENT OF FACTS

7 DAYS NO SHOWER. 168 CONSECUTIVE HOURS CONFINED TO A CELL
1. FROM NOV. 12-17 2024 PLAINTIFF WAS DENIED AN HOUR OUT OF HIS CELL TO EXERCISE &/OR SHOW-
ER. ON THE 12TH 13TH & 14TH RESPECTIVELY DEFENDANT ALLEN DENIED PLAINTIFF AN HOUR
OUT FOR EXERCISE &/OR A SHOWER STATING THAT OTHER PEOPLE TOOK PRECEDENCE OVER
PLAINTIFF BECAUSE PLAINTIFF WAS A CHILD RAPIST. PLAINTIFF DIDNT BOTHER ASKING DEF-
ENDANT ALLEN FOR AN HOUR OUT ON THE 15TH OR ANY SUBSEQUENT DAYS THAT HE WORKED.
PLAINTIFF HAD PREVIOUSLY WRITTEN 2 GRIEVANCES ON DEFENDANT ALLEN FOR MANIPULATION
CREATING & MAINTAINING A HOSTILE ENVIRONMENT TELLING PLAINTIFF HE DOESNT LIKE
HIM BECAUSE HIS CHARGES, & ABUSE OF AUTHORITY. PLAINTIFF KNEW FROM PREVIOUS DEA-
LINGS DEFENDANT ALLEN WOULD NEVER LET PLAINTIFF OUT FOR HIS HOUR.

2. ON NOV. 16TH 2024 DEFENDANT LAMB TOLD PLAINTIFF & OTHER INMATES ON PLAINTIFFS SIDE OF
THE SUB DAYROOM WHO WERE ELIGIBLE FOR HOURS OUT THAT WE COULD NOT GET OUR HOU-
RS OUT BECAUSE HE HAD NO PARTNER. HOWEVER PLAINTIFF NOTES INMATES HOUSED IN
THE ADJACENT SUB DAYROOM WERE GIVE THEIR HOURS OUT. ON NOV. 17TH PLAINTIFF
ASKED DEPUTY NUTALL FOR AN HOUR OUT ON MULTIPLE ROUNDS HE MADE. DEFENDANT
NUTALL IGNORED PLAINTIFF & WHEN HE DID STOP HE ACTED AS IF HE COULDNT HEAR
PLAINTIFF. FROM THE 18TH UNTIL APPROXIMATELY 8:00 PM OF NOV. 20TH 2024 PLAIN-
TIFF WAS ON SUICIDE WATCH & WASNT ALLOWED AN HOUR OUT FOR SHOWER OR EXERCI-
SE. FOR THE REMAINDER OF THE NOV. 20TH 2024 DAY PLAINTIFF WAS DENIED BY DEF-
ENDANT ALLEN & HIS REGIME A SHOWER & HOUR OUT FOR EXERCISE. THUS TOTALING
7 DAYS NO SHOWER & 168 CONSECUTIVE HOURS CONFINED TO A CELL.

MARTEZ DWIGHT MCKEE(PLAINTIFF) MARTEZ DWIGHT MCKEE

WAYNE COUNTY(DEFENDANT)ET.AL

## NCSO SOCIAL WORKER FULLER

4.ON NOVEMBER 20TH 2024 BETWEEN THE HOURS OF 11:30AM & 12:30 APPROXIMATELY SOCIAL WORKER FULLER CAME TO TALK TO PLAINTIFF ON SUICIDE WATCH. PLAINTIFF INFORMED MS. FULLER ALTHOUGH HE WASNT FEELING SUICIDAL AT THE MOMENT HE WAS EXPERIENCING HOMOCIDAL IDEATIONS & FEELING AGGRESSIVE DUE TO THE CONSTANT HARASSMENT PLAINTIFF HAD BEEN RECIEVING FROM NON PARTY DEPUTY T. STREET & DEFENDANT ALLEN BECAUSE OF HIS CHARGES. DEFENDANT FULLER WHOLLY DISREGARDED PLAINTIFFS ADMISSIONS & GAVE PLAINTIFF AN ULTIMATUM OF EITHER STAYING ON SUICIDE WATCH OR COMING OFF SUICIDE WATCH CONDITIONAL UPON HAVING A CELL MATE. PLAINTIFF INITIALLY OBJECTED REASONING THAT 1) PLAINTIFF WASNT CURRENTLY FEELING SUICIDAL & 2) PLAINTIFF DIDNT FEEL IT WAS SAFE OR WISE FOR HIM TO BE PLACED IN A CELL WITH SOMEONE WHO HAD MENTAL HEALTH ISSUES WHEN PLAINTIFF WAS SO CLEARLY STRUGGLING WITH HIS OWN. SOCIAL WORKER FULLER PROPOSED THE ULTIMATUM AGAIN & PLAINTIFFS DESIRE TO BE FREE OF THE RESTRICTIONS SYNONOMOUS WITH SUICIDE WATCH TRUMPED REASON. PLAINTIFF WAS GIVEN NO TREATMENT PLAN OR ANY TYPE OF COUNSEL FROM SOCIAL WORKER FULLER ABOUT HIS HOMOCIDAL IDEATIONS BECAUSE MS. FULLER AS WELL AS THE MENTAL HEALTH DIRECTOR AS WELL AS EVERY SOCIAL WORKER PLAINTIFF HAD SEEN (NOT INCLUDING SOCIAL WORKER AHMED) COULD CARE LESS ABOUT PLAINTIFFS MENTAL HEALTH & SAFETY IF HE WASNT SUICIDAL.

## PLAINTIFFS CONTINGENCY

4.PLAINTIFF EXPLAINED TO DEFENDANT FULLER IN SPITE OF HER AWARENESS OF THE NOVEMBER 17TH MENTAL HEALTH KITE LODGED AGAISNT DEFENDANT ALLEN. PLAINTIFF FURTHER INFORMED DEFENDANT FULLER OF THE CONVERSATIONS PLAINTIFF ALREADY HAD WITH SOCIAL WORKER AHMED REGARDING DEPUTY DEFENDANT ALLEN & THAT PLAINTIFF DIDNT FEEL SAFE AROUND HIM & THAT HE EXACERBATED PLAINTIFFS DEPRESSION & ANXIETY. THUS PLAINTIFFS CONTINGENCY WAS THAT HE BE PLACED ANY WHERE BESIDES A UNIT WHERE ALLEN WAS A REGULAR. DEFENDANT FULLER AGREED TO PLAINTIFFS CONTINGENCY & PLAINTIFF AGREED TO HAVING A CELL MATE & WAS SUBSEQUENTLY REMOVED FROM SUICIDE WATCH.

## DEFENDANT ALLEN ASSAULTS PLAINTIFF IN RESTRAINTS

5.PLAINTIFF NOTES THAT FROM NOVEMBER 13TH - 20TH PLAINTIFF HAD INITIATED 2 COMPLAINTS AGAISNT DEFENDANT ALLEN. THE AFOREMENTIONED COMPLAINT WAS FILED VIA A MENTAL HEALTH KITE ON NOVEMBER 17TH. IN WHICH PLAINTIFF CANDIDLY AMITTED HE INTENDED TO KILL HIMSELF DUE IN PART TO DEFENDANT ALLENS CONSTANT HARASSMENT & FALSELY TELLING ANYONE WHO WOULD LISTEN THAT PLAINTIFF HAD RAPED A CHILD. THIS PARTICULAR COMPLAINT GARNERED SIGNIFICANT ATTENTION BECAUSE OF PLAINTIFFS IMPLICATIONS OF SUICIDE ASSOCIATED WITH THE ACTIONS OF 2 SPECIFIC WCS OFFICERS. DEFENDANT ALLEN BEING ONE. CORPORAL'S GILBERT & DEFENDANT DEBONO (WHO WAS A REGULAR IN C-UNIT) WHILE PLACING PLAINTIFF ON SUICIDE WATCH BECAUSE OF SAID COMPLAINT INFORMED PLAINTIFF THAT EVERYONE WAS TALKING ABOUT THE NOVEMBER 17TH COMPLAINT. PLAINTIFF ~~NO~~ WAS FURTHER INFORMED THAT NON-PARTY DEPUTY STREET WAS ADMONISHED BY HIS SUPERIORS BECAUSE OF THE COMPLAINT & THAT DEFENDANT ALLEN COULD EXPECT THE SAME ADMONISHMENT ONCE HE RETURNED FROM HIS BREAK. PLAINTIFF NOTES DEFENDANT ALLEN DID NOT WORK THE 17TH 18TH OR 19TH IN PLAINTIFFS UNIT. THE SUBSEQUENT EVENTS TRANSPIRED ON DEFENDANT ALLENS 1ST DAY BACK FROM HIS 3 DAY HIATUS.

(1)

6.ON NOVEMBER 20TH BETWEEN THE HOURS OF 3:45PM - 5:00PM APPROXIMATELY DEFENDANT [redacted] HULLUM CAME TO PLAINTIFFS CELL GAVE PLAINTIFF HIS REGULAR CLOTHES & TOLD PLAINTIFF TO CHANGE OUT HE WAS BEING MOVED TO C-UNIT. PLAINTIFF CHANGED OUT OF HIS TURTLE SUIT & IMPATIENTLY WAITED FOR DEFENDANT [redacted] TO RETURN. WHEN PLAINTIFF INSTEAD SAW DEPUTY DEFENDANT ALLEN PLAINTIFF INSTANTLY KNEW IT WAS GOING TO BE SOME BS "WHAT ARE THE CUFFS FOR?" PLAINTIFF [redacted] ASKED "IM ESCORTING YOU." DEFENDANT REPLIED. PLAINTIFF LET DEFENDANT ALLEN PLACE HIM IN CUFFS & INSTANTLY REGRETED IT "A MAN THE CUFFS ARE TOO FUCKING TIGHT" DEFENDANT ALLEN IGNORED PLAINTIFF. UPON EXITING THE SUB DAYROOM PLAINTIFF IMMEDIATELY BEGAN LOOKING FOR HIS BOX OF PROPERTY. DEFENDANT ALLEN TOLD PLAINTIFF "YOU DONT GET YOUR PROPERTY WE HAVE TO SEARCH IT." PLAINTIFF RESPONDED THEY ALREADY SEARCHED IT WHEN THEY PACKED IT I HAVENT TOUCHED IT." DEFENDANT ALLEN RETORTED "WELL I HAVENT SEARCHED IT."

-PLAINTIFF CONCEDED: "LET ME JUST GRAB MY TABLET & ILL BE READY TO GO."
OES IN SEARCH OF HIS TABLET. DEFENDANT ALLEN SAID "MCKEE! LEAVE YOUR TABLET
RESPONDED "IM NOT LEAVING MY TABLET SO IT CAN GET LOST." DEFENDANT ALLEN
AIN "MCKEE! LEAVE YOUR TABLET!" PLAINTIFF CONTINUED TO LOOK FOR HIS TABLE
ANT ALLEN BARKED "MCKEE! LOCKDOWN! NOW!" PLAINTIFF INTENDED TO RESPOND
YOU MEAN LOCKDOWN? I WAS TOLD I WAS GOING TO C-UNIT." HOWEVER BEFORE
FF COULD FULLY FORM THE WORD WHAT, TURN AROUND & FACE DEFENDANT ALLEN COMP
EFUSE THE ORDER DEFENDANT ALLEN WAS ATTACK PLAINTIFF, WHO WAS RESTRAIN
TH HIS BACK TOWARDS DEFENDANT ALLEN IN NO WAY RESISTING, BY TRYING TO DRAG
L PLAINTIFF INTO THE SUB DAY ROOM WHILE SCREAMING "ILL BEAT YOUR ASS! YOU BET
LISTEN TO ME!" PLAINTIFF NOTES NO CODE WAS CALLED & NEITHER OF DEFENDANT
ENS CO-WORKERS ATTEMPTED TO ASSIST HIM BECAUSE 1) PLAINTIFF WAS ALREADY IN
STRAINTS 2) PLAINTIFF WAS ATTACKED FROM BEHIND & 3) PLAINTIFF WASNT RESISTI-
S NOR BEHAVING IN A THREATENING MANNER.

6. PLAINTIFF IS 6'5" TALL ALL MUSCLE WHEREAS DEFENDANT DEPUTY ALLEN IS 5'4" OR 5'5 & NOT AT
ALL ATHLETIC. SO IN THE COURSE OF DEFENDANT ALLEN TRYING TO PULL & DRAG THE 6'5" 200
PLUS POUND PLAINTIFF BECAUSE OF THE DISPARITIES IN HEIGHT DEFENDANT WAS ALSO PULL
NG THE PLAINTIFF DOWN. THE PLAINTIFF WHOSE PANTS WERE NOW FALLING DOWN, COULDNT
GAIN ANY PURCHASE ON THE JAILS CONCRETE FLOOR & FIGURED IT WAS INEVITABLE HE'D
FALL IF HE CONTINUED TO ALLOW DEFENDANT ALLEN TO DRAG HIM IN THIS MANNER. BECAU
E AT THIS POINT, PLAINTIFF WHO IS IN WAY BETTER SHAPE & INFINITY TIMES STRONGER
THAN DEFENDANT ALLEN WAS SIMPLY ALLOWING DEFENDANT ALLEN TO MANHANDLE HIM
TO PROVE THIS PLAINTIFF SIMPLY STOPPED & WITHOUT RAISING HIS STILL CUFFED HANDS OR
EVEN TOUCHING DEFENDANT ALLEN, PLAINTIFF [redacted] SHRUGGED DEFENDANT ALLENS HANDS
OFF OF HIM & SAID "I SHOULD BEAT YO BITCH ASS." WHILE SIMULTANEOUSLY (AGAIN WITHOUT RAISING
HIS STILL RESTRAINED HANDS) JUMPING AT DEFENDANT ALLEN WHOSE EYES GREW WIDE WITH
FEAR AS HE RECOILED TERRIFIED EXCLAIMING "OH! YOUR GOING TO BEAT MY ASS!"

7. THIS SHOWING OF FEAR FROM DEFENDANT ALLEN SATED PLAINTIFFS ANGER & HUMILIATION
& ASSAGED PLAINTIFFS EGO SO THOROUGHLY THAT PLAINTIFF LAUGHED & RESPONDED "I SAID I
SHOULD BEAT YO ASS, BUT YOU SCARED OF ME & I GOT HANDCUFFS ON. TAKE ME TO MY CELL YOU
SCARY ASS BITCH." PLAINTIFF NOTES THAT HE WASNT VISIBLY ANGRY, SHOWING SIGNS OF AGGRE
SSION, OR NON-COMPLIANT. FURTHER CAMERA FOOTAGE WILL SHOW THAT IF PLAINTIFF DESIRED
OR INTENDED TO ATTACK OR CAUSE BODILY INJURY TO DEFENDANT ALLEN HE COULD HAVE.
HOWEVER PLAINTIFFS ANGER FOR THE AFOREMENTIONED REASONS HAD WHOLLY SUB-
SIDED. PLAINTIFF WAS SUBSEQUENTLY LED TO HIS CELL WITH NO RESISTANCE OR VERB-
ALLY OR PHYSICALLY AGGRESSIVE OR THREATENING BEHAVIOR. PLAINTIFF WILLINGLY EN-
TERED HIS CELL & STUCK HIS HANDS OUT OF THE CELLS SLOT TO BE RELEASED FROM
THE CUFFS. AS DEFENDANT ALLEN WAS INSERTING HIS KEY INTO THE CUFFS PLAINTIFF
CALLED HIM A "PUSSY." DEFENDANT ALLEN BECAME IRATE & YELLED "OH YEAH!" & CLOSED
THE SLOT. LEAVING PLAINTIFF HANDCUFFED IN A CELL WITH A MENTALLY ILL INMATE
WHOM INMATE DIDNT KNOW. THE SUB DAYROOM CAMERA WILL CORROBORATE THAT PLA
INTIFF WAS ALREADY SECURED IN HIS CELL & DIDNT ATTEMPT TO GRAB OF SWING AT
DEFENDANT ALLEN. ALL OFFICERS PRESENT DURING THESE EVENTS FAILED TO INTER
VENE OR REPORT DEFENDANT ALLENS UNCONSTITUTIONAL MISCONDUCT.

## DEFENDANTS AL-WOSARI & HULL [redacted]

10. AT APPROXIMATELY 30 MINUTES TO AN HOUR LATER (OR 2) DEFENDANT AL-WOSARI WAS PASSI
NG OUT DINNER TRAYS & THIS DIALOGUE ENSUED:

DEFENDANT AL-WOSARI (HEREAFTER "DA"): YOU WANT TO EAT?

PLAINTIFF (HEREAFTER "P"): YEAH. BUT HOW AM I GOING TO EAT WITH THESE CUFFS ON THEY'RE
HURTING MY WRIST. CAN YOU PLEASE TAKE THE OFF?"

DA: I CANT ALLEN HAS THE KEY.

P: WELL CAN YOU CALL A SERGEANT THEN BECAUSE I HAVE TO SHIT & THESE CUFFS ARE SO TIGHT
THEY'RE CUTTING OFF MY CIRCULATION?"

DA: IM NOT DOING THAT EITHER. YOU WANT TO EAT OR NOT?"

P: YEAH MAN. I GET A KOSHER TRAY. "DA" LOOKS FOR THE TRAY & DOESNT FIND IT.

DA: YOU DONT GET NO KOSHER TRAY.

P: YES I DO. ALL YOU HAVE TO DO IS LOOK IT UP OR CALL THE KITCHEN.

DA: IM NOT DOING SHIT. YOU DONT GET A KOSHER HOW THE FUCK ARE YOU GOING TO TELL ME.

P: WHATEVER MAN.

: YOU JUST WONT EAT THEN.

11. DEFENDANT AL-WOSARI WOULD ON TO FEED MY CELLMATE & NOT ME. CAMERA FOOTAGE FROM THAT DAY WILL SHOW THAT ALTHOUGH DEFENDANT AL-WOSARI STOOD AT PLAINTIFFS DOOR FOR APPROXIMATELY 5-15 MINUTES HE ONLY PASSED 1 TRAY & 1 JUICE THROUGH THE FOODSLOT. CAMERA FOOTAGE WILL ALSO SHOW DEFENDANTS AL-WOSARI & [redacted] MADE SEVERAL ROUNDS & EACH STOPPED AT PLAINTIFFS DOOR AT LEAST ONCE, WHERE PLAINTIFF ASKED THE BOTH TO 1.) TAKE OFF THE CUFFS BECAUSE THEY WERE HURTING HIS WRIST & HE NEEDED TO DEFECATE & 2.) TO CALL A SERGEANT CAPTAIN OR LIEUTENANT. BOTH DEPUTIES DENIED PLAINTIFFS REQUEST & EITHER LAUGHED OR IGNORED PLAINTIFF ON SUBSEQUENT ROUNDS.

12. CAMERA FOOTAGE WILL ALSO SHOW DEFENDANT COX CAME TO PLAINTIFFS DOOR AS WELL. DURING THIS ENCOUNTER PLAINTIFF EXPLAINED HIS PLIGHT TO DEFENDANT COX ULTIMATELY ASKING DEFENDANT COX TO TAKE THE CUFFS OFF BECAUSE THEY WERE TOO TIGHT & WERE CAUSING HIS HANDS TO SWELL. PLAINTIFF ALSO INFORMED DEPUTY COX THAT HE'D BEEN IN THE CUFFS FOR HOURS & NEEDED TO DEFECATE. PLAINTIFF ALSO ASKED DEFENDANT COX TO CALL A CAPTAIN SERGEANT OR LIEUTENANT. DEFENDANT COX TOLD PLAINTIFF 1.) HE COULDNT LET PLAINTIFF OUT OF THE CUFFS BECAUSE IT WASNT HIS FLOOR & 2.) THAT HE WOULD GET THE SERGEANT FROM HIS FLOOR TO COME DOWN. DEFENDANT COX LIED ABOUT BOTH THINGS.

## SERGEANT HOLMAN ASSAULTS PLAINTIFF IN RESTRAINTS

13. ON NOVEMBER 20, 2024 BETWEEN THE HOURS OF 7:00PM - 9:00PM APPROXIMATELY SERGEANT LOFTIS SERGEANT HOLMAN & DEPUTY [redacted] CAME TO PLAINTIFFS CELL TO EXTRACT HIS CELLMATE FROM THE CELL & THIS DIALOGUE ENSUED:

PLAINTIFF(HEREAFTER "P"): MAN YALL NEED TO GET ME UP OUT THIS UNIT BECAUSE IM GONE END UP FUCKING ALLEN UP.

DEFENDANT LOFTIS(HEREAFTER "DL"): SHUT THE FUCK UP YOUR NOT RUNNING SHIT. WE'RE DISCIPLINING YOU.

DEFENDANT HOLMAN(HEREAFTER "DH") (TO PLAINTIFFS CELLMATE) YOU. GRAB YOUR SHIT. LETS GO.

P: DAMN! YALL NOT EVEN GONE ASK ME WHAT HAPPENED OR TRY TO RESOLVE THE ISSUE? YA'LL SUPPOSE TO BE SERGEANTS [PLAINTIFF STOOD FROM WHERE HE WAS SITTING RAISED HIS HANDS PALMS UP IN A NON-THREATENINGLY MANNER] CAN YA'LL AT LEAST TAKE THESE CUFFS OFF? MY HANDS HURT & ARE SWOLLEN BECAUSE I'VE BEEN CUFFED FOR HOURS.

DH: NO! SIT THE FUCK DOWN!

P: I DONT HAVE TO SIT DOWN IM IN MY CELL.

DH: MOVE OUT OF THE WAY SO YOUR BUNKIE CAN EXIT THE CELL!

P: IM NOT IN HIS WAY WHEN HE'S DONE GETTING HIS SHIT HE CAN GO AROUND ME. CAN YALL PLEASE TAKE THESE CUFFS OFF THEY'RE HURTING MY WRIST.

14. DH: SIT THE FUCK DOWN!

P: NO. IM IN MY CELL I CAN STAND IF I WANT TO. SERGEANT HOLMAN THEN PUSHES PLAINTIFF WITH BOTH HANDS STEPPING FURTHER INTO PLAINTIFFS CELL & OUTSIDE THE RANGE OF THE CAMERAS VIEW. AS PLAINTIFFS CELLMATE IS EXITING THE CELL DEFENDANT HOLMAN WITH HIS LEFT HAND PUNCHES PLAINTIFF IN HIS RIGHT EYE.

P: WHAT THE FUCK?! DEFENDANT HOLMAN (NOW STANDING IN THE MIDDLE OF PLAINTIFFS CELL TOTALLY OUT OF THE CAMERAS VANTAGE POINT) PULLS HIS TASER OUT WITH HIS LEFT HAND & PUSHES A NOW DAZED & CONFUSED PLAINTIFF TO THE GROUND WITH HIS RIGHT HAND.

DH: GET UP NOW SO I CAN TAZE YOUR BITCH ASS! PLAINTIFF THOUGHT DEFENDANT HOLMAN WOULD MAKE GOOD ON HIS PROMISE SO PLAINTIFF STAYED DOWN WITH HIS STILL SHACKLED HANDS COVERING HIS FACE. ALL THREE DEFENDANTS (BROWN, HOLMAN, LOFTIS) LAUGHED AS PLAINTIFF COWERED IN TERROR.

MARTEZ DWIGHT MCKEE(PLAINTIFF) MARTEZ DWIGHT MCKEE
V.
WAYNE COUNTY(DEFENDANTS)ET.AL

15. SERGEANT HOLMAN RETREATED FROM PLAINTIFFS CELL TASER STILL TRAINED ON PLAINTIFF IN HIS LEFT HAND. ONCE THE DOOR CLOSED PLAINTIFF IMMEDIATELY RAN TO THE DOOR & SCREAMED:

P: THIS BITCH ASS SERGEANT JUST PUNCHED ME IN MY EYE IN HANDCUFFS! DEFENDANTS HULL [redacted] & LOFTIS FAILED TO INTERVENE. PLAINTIFF MADE THE UNIT DEPUTIES AWARE OF SERGEANT HOLMANS ASSAULT ON HIS PERSON. THEY COLLECTIVELY LAUGHED AT & IGNORED PLAINTIFF. PLAINTIFF WAS SO IRATE & BELLIGERENT AT MED PASS (WHERE HE ACCUSED DEFENDANT ALLEN OF SENDING DEFENDANT HOLMAN TO DO HIS GRUNT WORK) THAT HE COULDNT EVEN TAKE HIS MEDICATION.

## 7 HOURS IN HANDCUFFS LATER

16. ON NOVEMBER 20, 2024 AFTER MED PASS AT APPROXIMATELY 11:00PM DEFENDANT ALLEN CAME TO PLAINTIFFS CELL AFTER 7 HOURS TO ATTEMPT TO TAKE PLAINTIFF OUT OF HANDCUFFS & THIS DIALOGUE ENSUED:

DEFENDANT ALLEN (HEREAFTER "DA"): MCKEE COME TO THE DOOR SO I CAN TAKE OFF THE RESTRAINTS.

PLAINTIFF (HEREAFTER "P"): NO. SEND SOMEONE ELSE TO GET THEM. & WHILE YOUR AT IT CALL THE MICHIGAN STATE POLICE THAT SERGEANT PUNCHED ME IN MY FACE WHILE HANDCUFFED.

DA: (IN A VOICE THE WHOLE SUB DAYROOM COULD UNDOUBTEDLY COULD & DID HEAR) HE DID? HA! GOOD. IM GLAD! & DO YOU THINK MSP IS GOING TO CHAMPION A CHILD RAPIST OVER A FELLOW OFFICER? & THE REPORT HAS ALREADY BEEN WRITTEN TO MAKE IT LOOK LIKE YOU THREATENED BOTH SERGEANTS. NOW LAST CHANCE GIVE ME THE CUFFS!

P: GET YO BITCH ASS AWAY FROM MY DOOR PUSSY! DEFENDANT ALLEN WALKED AWAY FROM PLAINTIFFS DOOR & SENT DEFENDANT COX TO RETRIEVE HIS HANDCUFFS & THE SUBSEQUENT DIALOGUE ENSUED:

17. DEFENDANT COX (HEREAFTER "DC"): (OPENS DOOR SLOT) COME ON MCKEE MAN LET ME GET YOU OUT THEM RESTRAINTS.

PLAINTIFF (HEREAFTER "P"): DAMN COX. I THOUGHT WE WERE BETTER THAN THAT? YOU COULDVE TOOK THESE BITCHES OFF ME HOURS AGO.

DC: I COULDNT MCKEE I WASNT WORKING DOWN HERE.

P: YOUR NOT WORKING DOWN HERE NOW.

DC: TRUE.

P: BITCH ASS NIGGA HIT ME IN MY FACE WHILE I WAS HANDCUFFED.

DC: WHO? WHAT (OR WHAT? WHO?)

P: SERGEANT HOLMAN.

18. DC: WOW! THATS CRAZY MCKEE. YOU FORREAL?

P: WHY WOULD I MAKE THIS UP? LOOK AT MY FACE.

DC [LOOKS AT PLAINTIFFS FACE]: WOW! THATS CRAZY MCKEE. PLAINTIFF NOTES THAT DESPITE HIS INJURY NONE OF [redacted] THE AFOREMENTIONED DEFENDANTS REPORTED PLAINTIFFS ALLEGATIONS OR INJURY. PLAINTIFFS HANDS WERE SWOLLEN NUMB & IN PAIN. PLAINTIFF WAS NOT TAKEN TO MEDICAL & MEDICAL WASNT CALLED FOR PLAINTIFF.

## NAPHCARE CHARGE NURSE LOHING

19. ON NOVEMBER 20TH/21ST BETWEEN THE HOURS OF 11:30PM — 12:15PM APPROXIMATELY DEFENDANTS MOODY & CHARGE NURSE LOHING ARRIVED AT PLAINTIFFS DOOR BECAUSE PLAINTIFF HAD CONSTANTLY NAGGED UNKNOWN CORPORAL #2 UNTIL HE SNAPPED ON PLAINTIFF. PLAINTIFFS EYE HAD SWOLLEN SHUT & WAS HEMORRAGING SO BAD THE WHITE PART OF PLAINTIFFS EYE WAS 70% RED. DEFENDANT LOHING FROM 5 FEET AWAY, THROUGH A DIRTY GLASS WINDOW, IN THE DARK ORDERED PLAINTIFF TO TURN TO THE SIDE & SAID "AINT NOTHING WRONG WITH HIS EYE" PLAINTIFF THEN ASKED DEFENDANT LOHING, [redacted] WHO ALREADY HAD HER PHONE IN HER HAND, IF SHE COULD AT LEAST TAKE A PICTURE & GET A SECOND OPINION BECAUSE PLAINTIFF WAS IN EXCRUCIATING PAIN & ANYONE COULD CLEARLY SEE SOMETHING WAS WRONG WITH PLAINTIFFS EYE, & PLAINTIFF WAS SURE HE'D BEEN ASSAULTED. DEFENDANT LOHING CURTLY REPLIED "NO" AS IF PLAINTIFF WAS THE MOST REPULSIVE BEING ON THE PLANET & WALKED AWAY DENYING PLAINTIFF MEDICAL ATTENTION COMPLETELY.

## EXHAUSTION

20. PLAINTIFF HADNT EATEN SINCE NOVEMBER 17TH 2024. PLAINTIFF HAD BEEN FLUSHING HIS FOOD DOWN THE TOILET ON SUICIDE WATCH BECAUSE HE WAS TOO EMOTIONAL TO EAT. THE LACK OF FOOD COUPLED WITH [redacted] THE DAYS EVENTS AMOUNTED TO PLAINTIFF PASSING OUT APPROXIMATELY 15 - 20 MINUTES AFTER SPEAKING WITH DEFENDANTS LOHING & MOODY. PLAINTIFF WOKE UP, CONFUSED, SCARED, EYE STILL HURTING & SOAKED IN HIS OWN URINE. PLAINTIFF DIZZYLY GOT UP OFF THE FLOOR & ONCE THE VERTIGO SUBSIDED, ASKED ANYONE WHO WOULD ANSWER: HOW MANY ROUNDS HAVE THEY DONE? SOMEONE RESPONDED "THREE OR FOUR."

21. PLAINTIFF WAS LIVID HE COULD'VE BEEN IN HIS CELL DEAD OR DYING & THE DEPUTIES WOULD HAVE LEFT ME FOR DEAD OR DYING BECAUSE THEY WERENT EVEN LOOKING INSIDE THE CELLS ON THEIR ROUNDS DESPITE THE FACTS THAT 1.) THIS WAS THE MENTAL HEALTH FLOOR 2.) PLAINTIFF HAD JUST COME OFF SUICIDE WATCH HOURS AGO & 3.) PLAINTIFF HAD A HISTORY OF SUICIDE ATTEMPTS AT THIS JAIL. ON DEFENDANT MARTINEZ' ROUND PLAINTIFF STOPPED HIM & INQUIRED: "HOW IS IT THAT YALL DID THREE OR FOUR ROUNDS & DIDNT SEE ME PASSED OUT LAYING IN A PUDDLE OF HIS OWN URINE?" INSTEAD OF ASKING PLAINTIFF IF HE WAS OK OR NEEDED TO SEE A NURSE DEFENDANT MARTINEZ ASKED: "HOW DO YOU KNOW HOW MANY ROUNDS WE MADE IF YOU WERE PASSED OUT?"

22. PLAINTIFF NOTES THIS IS THE TYPICAL KIND OF RESPONSE AN INMATE COMES TO EXPECT FROM A JAILER, THOUGH THIS ANSWER, OR QUESTION RATHER, MAY SEEM TO HAVE SOME VALIDITY TO THOSE WHO ARE ARGUEMENATIVE IN NATURE & ADEPT IN THE ARTS OF RHETORIC & DEFLECTION (WHICH MOST JAILERS & INMATES ALIKE ARE) ITS WHOLLY BESIDES THE POINT. POINT BEING: NOONE IN THE THREE OR FOUR ROUNDS MADE LOOKED INTO [redacted] PLAINTIFFS CELL TO SEE IF HE WAS ALIVE OR NOT. DEFENDANT MARTINEZS RESPONSE CONFIRMED TO PLAINTIFF THAT WCSO DEPUTIES COULD CARE LESS.

23. PLAINTIFF TOLD MARTINEZ HE WAS HAVING CHEST PAINS & NEEDED TO GO TO HEALTH CARE. PLAINTIFF WAS CUFFED & TAKEN TO HEALTH CARE WHERE PLAINTIFF REFUSED TO LEAVE UNTIL HE RECIEVED MEDICAL ATTENTION FOR HIS NOW SWOLLEN SHUT EYE WHICH WAS IN PAIN & HEMORRAGING. PLAINTIFF ALSO INFORMED DEFENDANTS LOHING & MORTON THAT HE HAD PASSED OUT & URINATED ON HIMSELF HOWEVER NIETHER NURSE CHECKED PLAINTIFFS VITALS OR INQUIRED ANY FURTHER ABOUT HIM PASSING OUT. PLAINTIFF WAS GIVEN NOTHING FOR HIS PAIN. PLAINTIFF NOTES THAT IF HE'D NEVER CLAIMED CHEST PAINS & REFUSED TO LEAVE HEALTH CARE SERGEANT HOLMANS ASSAULT ON PLAINTIFF WOULD HAVE WENT UNREPORTED, & EVEN THOUGH IT WAS REPORTED NO MEANINGFUL INVESTIGATION WAS DONE CONSIDERING PLAINTIFF WAS NEVER INTERVIED BY WCSO INTERNAL AFFAIRS. PICTURES WERE TAKEN BY DEFENDANT MORTON THIS DAY.

## SERGEANT SHEEN

24. SERGEANT SHEEN WOULD ULTIMATELY BE THE ONLY PERSON TO ASK PLAINTIFF IF HE DESIRED TO PROSECUTE DEFENDANT HOLMANS ASSAULT & PLAINTIFF RESPONDED IN THE AFFIRMATIVE. PLAINTIFF WAS GIVEN A WITNESS STATEMENT & A PROSECUTION RIGHTS FORM TO FILL OUT. PLAINTIFF WAS APPREHENSIVE OF SERGEANT SHEENS MOTIVES FOR HELPING HIM HOWEVER SERGEANT SHEEN INFORMED PLAINTIFF HE WOULD DO WHAT WAS RIGHT. PLAINTIFF FILLED OUT THE AFOREMENTIONED FORMS WHILE SERGEANT SHEEN REVIEWED THE CAMERA FOOTAGE. SERGEANT SHEEN AFTER REVIEWING THE CAMERA INFORMED PLAINTIFF HE COULD NOT SEE INSIDE THE CELL WHERE THE ASSAULT TOOK PLACE. THIS DISHEARTENED PLAINTIFF BECAUSE NOW IT WOULD BE HIS WORD AGAINST THREE LAW ABIDDING CRIMINALS (I.E. DEFENDANTS BROWN, HOLMAN & LOFTIS). DEFENDANT ALLENS REMARK ABOUT MSP & FELLOW OFFICERS STARTED TO ECHO IN PLAINTIFF'S HEAD.

25. PLAINTIFF AGAIN VOICED HIS APPREHENSION & SERGEANT SHEEN AGAIN REASSURED PLAINTIFF HE WOULD DO WHAT WAS RIGHT. HE FURTHER INSTRUCTED PLAINTIFF TO WRITE DOWN THE ENCOUNTER WITH DEFENDANT LOHING WHILE HE AGAIN WENT TO CHECK THE CAMERAS TO SEE IF HE CAN ENHANCE THE FOOTAGE & SEE INSIDE OF THE CELL AT ANY ANGLE. ALTHOUGH HE HAD NO SUCCESS WITH THE CAMERA CONFIGURATIONS HE REVEALED HE BELIEVED PLAINTIFF FOR 2 REASONS: 1) THE INCIDENT REPORT OMITTED THINGS THAT SHOULD'VE BEEN ADMITTED & 2) SERGEANT HOLMAN HAD A HISTORY OF ASSAULTING INMATES SPECIFICALLY IN THEIR CELLS.

26. ANOTHER RED FLAG POPPED UP WHEN SERGEANT SHEEN ATTEMPTED TO MOVE PLAINTIFF FROM B-UNIT (DEFENDANT ALLENS UNIT; WHICH PLAINTIFF REFUSED TO GO BACK TO) TO C-UNIT. CLASSIFICATION INFORMED SERGEANT SHEEN THAT PLAINTIFF WAS ALREADY HOUSED IN C-UNIT IN THE SYSTEM & PLAINTIFF SHOULDNT HAVE BEEN HOUSED IN B-UNIT IN THE FIRST PLACE.

## C-UNIT EVENTS

[redacted] 27. ON NOVEMBER 21ST 2024 AFTER ALREADY BEING ASSIGNED TO A CELL APPROVED BY THE SERGEANT & UNIT OFFICERS. (ONE OF WHOM JUST SO HAPPENED TO BE WORKING; DEPUTY ECHOLS; WHO ALSO INFORMED PLAINTIFF THAT SGT. HOLMAN HAD A HISTORY OF INMATE ASSAULTS THAT ULTIMATELY HAVE BEEN COVERED UP. AT APPROXIMATELY 8:00 DEFENDANT CORPORAL DEBONO WOKE PLAINTIFF UP & TOLD HIM TO CUFF UP BECAUSE HE WAS MOVING TO THE OTHER SIDE OF THE UNIT. PLAINTIFF COMPLIED & DEFENDANT DEBONO SLAPPED THE CUFFS ON PLAINTIFFS WRIST WAY TOO HARD & WAY TOO TIGHT TO HAVE BEEN DONE HAPHAZARDLY. PLAINTIFF SCREAMED "OW! MAN WHAT THE FUCK I DO TO YOU?!" DEFENDANT DEBONO SAID PLAINTIFF HADNT DONE ANYTHING & THAT HE WASNT UPSET. HOWEVER PLAINTIFF COULD ADDUCE, FROM THE WAY THAT DEFENDANT DEBONO WAS VIOLENTLY THROWING PLAINTIFF'S PROPERTY AROUND & THE FACT THE INMATE SWAPPING CELLS WITH PLAINTIFF WAS IN THE SAME UNIT & GOING THE SAME DISTANCE HOWEVER THE FORMER WASNT CUFFED, THAT BOTH STATEMENTS WERE NOT TRUE.

28. PLAINTIFF WAS ULTIMATELY PLACED IN A CELL BY HIMSELF & DEUPTY ECHOLS LET PLAINTIFF KNOW IT WASNT PARANOIA & AGREED THAT DEFENDANT CORPORAL DEBONO WAS TRIPPING. AT APPROXIMATELY 8:45 AM PLAINTIFF HAD A MISCONDUCT HEARING WITH DEFENDANT HEARINGS INVESTIGATOR BAILEY. DEFENDANT BENDERS WAS PRESENT DURING THE ENTIRE HEARING. PLAINTIFF EXPLAINED TO HEARINGS INVESTIGATOR BAILEY HE WAS ASSAULTED ON THE DAY OF THE INCIDENT & SHOWED HER HIS NOW BLACK & BLOODY EYE. PLAINTIFF EXPLAINED THE MISCONDUCT WAS A MERE PRETEXT TO COVER FOR THE DEPUTIES MISCONDUCT. PLAINTIFF WAS ULTIMATELY ADJUDICATED GUILTY HOWEVER DEFENDANT BAILEY EXPRESSLY STATED PLAINTIFF WAS ALLOWED TO WRITE GRIEVANCES, [redacted] APPEAL HER MISCONDUCT RULING, WRITE MEDICAL KITES ETC., FURTHER STATING ONLY PLAINTIFFS PHONE BE RESTRICTED.

MARTEZ DWIGHT MCKEE(PLAINTIFF)
V.
WAYNE COUNTY(DEFENDANT) ET AL

MARTEZ DWIGHT MCKEE

29.AT APPROXIMATELY 9:00AM AFTER THE HEARING WAS DONE PLAINTIFF(IN RESTRAINTS) INFORMED DEFENDANT DEBONO THAT DEFENDANT BAILEY FOUND PLAINTIFF GUILTY & RESTRICTED HIS PHONE BUT OTHERWISE SAID HE WAS ALLOWED TO HAVE HIS TABLET. PLAINTIFF HEARD DEPUTY BENDERS SAY "& WE'RE GOING TO TAKE THAT TOO." PLAINTIFF TURNED & SAID "YALL AINT TAKING NOTHING. SHE SAID I [redacted] CAN HAVE MY TABLET SPECIFICALLY TO WRITE GRIEVANCES. YOU HEARD STOP PLAYING." DEPUTY BENDERS RESPONDED "I AINT HEAR NOTHING." PLAINTIFF TURNED & CONTINUED TO LOOK FOR HIS TABLET & HE HEARD SOMEONE SAY SOMETHING ABOUT SERGEANT HOLMAN.

30.PLAINTIFF COULDNT FIND HIS TABLET AMONGSNT THE OTHERS & STARTED TO PANIC & SCREAMED "WHERE THE FUCK IS MY TABLET?" EVERYONE TURNED TO LOOK AT PLAINTIFF. UNKNOW COPORAL #2 WHO WAS THE CLOSET TO PLAINTIFF SAID: "LOCKDOWN & ONCE WE RECIEVE CONFIRMATION WE'LL GET IT TO YOU." PLAINTIFF THEN POINTED AT DEFENDANT BENDERS & SAID: "HE CAN CONFIRM. HE WAS RIGHT THERE. HE HEARD HER." EVERYONE ON LOOKED AT DEPUTY BENDERS WHO RESPONDED "I AINT HE NOTHING. ALL I HEARD WAS PHONE RESTRICTION." LIKE PROGRAMMED ROBOTS ALL EYES WERE BACK ON PLAINTIFF. PLAINTIFF FELT OVERWHELMED.

31.DEFENDANT UNKOWN CORPORAL #2 TOLD PLAINTIFF TO "LOCK DOWN" AGAIN WITH MORE AUTHORITY THIS TIME. PLAINTIFF, SEEING WHERE THIS WAS HEADING, CALMED DOWN RAISED HIS HANDS(STILL IN RESTRAINTS) & SAID: "IM NOT GOING TO MY CELL WITHOUT MY TABLET. THE LADY SAID I CAN HAVE MY TABLET. I JUST WANT TO WRITE A GRIEVANCE." PLAINTIFF MOVED TOWARDS THE CHAIRS TO SIT DOWN. DEFENDANT DYERS PULLED HER TASER ON PLAINTIFF. PLAINTIFF ASKED: "YOUR GOING TO SHOOT ME IN RESTRAINTS EVEN THOUGH IM NOT BEING HOSTILE?" WITH NO HESITATION DYERS RESPONED "YUP." PLAINTIFF WITH HIS HANDS STILL RAISED SAT DOWN (NOW IN CASE HE GOT TASED) & CALMLY STATED: "IM NOT TRYING TO CAUSE A PROBLEM. I JUST WANT MY TABLET SO I CAN WRITE A GRIEVANCE & ILL HAPPILY LOCKDOWN." SOMEONE CALLED FOR BACK UP.

32.PLAINTIFF NOTES THERE WE'RE ALREADY 3 SERGEANTS(DYERS, SHELBY & CARLSON) 2 CORPORALS(DEBONO & UNKNOWN CORPORAL) & 2 DEPUTIES(BENDERS & ECHOLS). PLAINTIFF FURTHER NOTES: THESE OFFICERS WERE CALLED TO C-UNIT FOR A NON-COMPLIANT INMATE. HOWEVER NO TASER WAS DRAWN ON HIM OR ANY FORCE WAS USED AGAINST HIM TO MAKE HIM [redacted] COMPLIANT. & HE WASNT EVEN IN RESTRAINTS & HE WAS AN ASSAULTIVE INMATE[redacted].

33.APPROXIMATELY 2-3 MINUTES LATER DEFENDANT SERGEANT HOLMAN APPEARED NEXT TO PLAINTIFF SAYING "GET THE FUCK UP!" PLAINTIFF WAS TERRIFIED & IMMEDIATELY SCOOTED AWAY FROM DEFENDANT SERGEANT HOLMAN SHRIEKING "PLEASE DONT TOUCH ME! YOU ALREADY PUNCHED ME ONCE!" HOLMAN REPLIED SHOUTING "SHUT UP YOU CHILD FUCKER! I NEVER HIT [redacted] YOU!" PLAINTIFF WAS THEN APPREHENDED BY 2 NON-PARTY UNKNOWN DEPUTIES. AS PLAINTIFF WAS BEING ESCORTED TO HIS CELL DEFENDANT HOLMAN TRAILED BEHIND WHILE VERBALLY ASSAULTING PLAINTIFF. SCREAMING "HEY EVERYBODY THIS GUY IS A CHILD FUCKER! HE'S IN HERE FOR FUCKING CHILDEN!" PLAINTIFF NOTES HE HASNT HAD SEX WITH A CHILD SINCE HE WAS A CHILD HIMSELF & ISNT INCARCERATED FOR HAVING SEX WITH A CHILD OR ATTEMPTING TO HAVE SEX WITH A CHILD. FURTHERMORE PLAINTIFF IS FACTUALLY INNOCENT OF THE CHARGES HE'S ACCUSED OF EVEN IF HE'S UNABLE TO PROVE HIS INNOCENCE LEGALLY.

34.PLAINTIFF NOTES THAT PRIOR TO THE AFOREMENTIONED EVENTS PLAINTIFF HAD AN ENCOUNTER WITH SOCIAL WORKER FULLER WHERE HE ASKED HER: "WHY DID YOU TELL THEM TO MOVE ME 2 B-UNIT I THOUGHT WE HAD A DEAL?" TO WHICH SOCIAL WORKER FULLER RESPONDED: "I SPECIFICALLY TOLD CUSTODY NOT TO MOVE YOU TO B-UNIT. YOU WERE SUPPOSED TO BE MOVED TO C-UNIT." CAMERA FOOTAGE WILL SHOW THIS CONVERSATION TOOK PLACE IN C-UNITS COMMON AREA RIGHT NEXT TO THE TABLET CHARGING STATION.

MARTEZ DWIGHT MCKEE(PLAINTIFF) MARTEZ DWIGHT MCKEE
V.
WAYNE COUNTY(DEFENDANTS) ET. AL

35. AT APPROXIMATELY 9:10AM AS WELL AS 9:40AM ON BOTH ROUNDS PLAINTIFF ASKED DEFENDANT DEBONO FOR HIS TABLET SO HE COULD WRITE GRIEVANCES OR PAPER & PENCIL IN THE ALTERNATIVE. DEFENDANT DEBONO SAID: "ONCE I FIND YOUR TABLET ILL GIVE IT TO YOU & ILL HAVE PAPER & PENCIL FOR YOU ON MY NEXT ROUND." THIS WAS AT APPROXIMATELY 9:10AM ON HIS NEXT ROUND @ APPROXIMATELY 9:40AM PLAINTIFF ASKED DEFENDANT DEBONO: "DID YOU FIND MY TABLET?" DEFENDANT DEBONO RESPONDED: "NO." PLAINTIFF: "MAN MY TABLET IS RIGHT IN THE OFFICERS BUBBLE!" DEFENDANT DEBONO: "ILL BRING YOU PAPER & PENCIL ON MY NEXT ROUND. ON SUBSEQUENT ROUNDS DEFENDANT DEBONO HAD NO PENCIL & PAPER FOR PLAINTIFF. NON-PARTY DEPUTY ECHOLS INFORMED PLAINTIFF: "YOUR TABLET IS IN THE OFFICERS STATION. I TRIED TO GET IT & BRING IT TO YOU. I WAS GIVEN A DIRECT ORDER NOT TO GIVE YOUR TABLET OR PAPER & PENCIL FOR A GRIEVANCE. SOMETHING WIERD IS GOING ON FOR SURE."

36. AT APPROXIMATELY 10:00AM – 11:55AM PLAINTIFF SENT INMATE CHILDS TO ASK SERGEANT CARLSON IF PLAINTIFF COULD HAVE HIS TABLET TO WRITE A GRIEVANCE. DEFENDANT CARLSON TOLD INMATE CHILDS: "HE CANT HAVE HIS TABLET BECAUSE HE'S ON DISCIPLINE." PLAINTIFF NOTES HE'S BEEN ON DISCIPLINARY STATUS BEFORE & AFTER THIS EVENT. PLAINTIFF WAS ALLOWED TO HAVE HIS TABLET BOTH TIMES WITH RESTRICTED ACCESS. FURTHERMORE WAYNE COUNTY JAIL(ADF) INMATE RULES & REGULATIONS, PAGE 14 PARAGRAPH 5 STATES IN RELEVANT PART: INMATES CLASSIFIED AS MAXIMUM SECURITY, PRE DISCIPLINARY OR DISCIPLINARY STATUS SHALL HAVE ACCESS TO ELECTRONIC LAW LIBRARY SYSTEM VIA INMATE TABLET...(A)

## DEFENDANT CAPTAIN FADLALLAH

37. ON NOVEMBER 21 2024 BETWEEN THE TIMES OF 12:00AM – 1:00PM APPROXIMATELY THE COMMANDER OF THE WCSO ALONG WITH DEFENDANT FADLALLAH & SEVERAL OTHER PEOPLE MADE A ROUND IN PLAINTIFFS UNIT. FROM APPROXIMATELY 15-20 FEET AWAY PLAINTIFF YELLED AT THE TOP OF HIS LUNGS, OUT OF HIS OPEN DOOR SLOT, AT LEAST 10 TIMES: "HELP I WAS ASSAULTED BY A WAYNE COUNTY SHERIFFS DEPUTY LAST NIGHT & THEY'RE TRYING TO COVER IT UP! I FEAR FOR MY LIFE CALL THE MICHIGAN STATE POLICE!" DEFENDANT FADLALLAH WHO WAS FOCUSING DEEPLY ON THE GROUPS CONVERSATION BROKE HIS CONCENTRATION MULTIPLE TIMES & LOOKED PLAINTIFF SQUARELY IN [redacted] THE FACE AS HE PLEAD FOR SUCCOR. PLAINTIFF ADDS THAT DEFENDANT FADLALLAH'S VIEW OF PLAINTIFF WAS UNOBSTRUCTED.

38. ON DEPUTY ECHOLS ROUND PLAINTIFF ASKED HIM TO TELL DEFENDANT FADLALLAH PLAINTIFFS PLIGHT & DEPUTY ECHOLS RESPONDED: "I WILL AS SOON AS IM DONE MAKING THIS ROUND. I GOT YOU." TRUE TO HIS WORD DEPUTY ECHOLS TAPPED FADLALLAH, DEFENDANT FADLALLAH WAS SO ENGROSSED IN THE GROUPS CONVERSATION DEPUTY ECHOLS HAD TO TAP HIM MULTIPLE TIMES TO GET HIS ATTENTION. ONCE DEPUTY ECHOLS GOT HIS ATTENTION DEPUTY ECHOLS EXPLAINED PLAINTIFFS PLIGHT & POINTED TO PLAINTIFF AS HE DID SO. DEFENDANT FADLALLAH LOOKED AT PLAINTIFF DIRECTLY IN HIS FACE AS HE DID BEFORE. PLAINTIFF WAVED DEFENDANT FADLALLAH OVER OUT OF HIS SLOT. DEFENDANT FADLALLAH SHOOK HIS HEAD NO. PLAINTIFF AGAIN WAVED DEFENDANT FADLALLAH OVER & DEFENDANT FADLALLAH AGAIN WAVED HIS HEAD NO. ON DEPUTY ECHOLS SUBSEQUENT ROUNDS HE TOLD PLAINTIFF: "I TOLD HIM WHAT WAS GOING ON WITH YOU. HE SAID HE'D COME TALK TO YOU LATER. PLAINTIFF NOTES AS SOON AS DEPUTY ECHOLS LEFT DEFENDANT FADLALLAH HE MADE A SUSPICIOUS PHONE CALL. PLAINTIFF BELIEVES THIS PHONE CALL WAS MADE TO SERGEANT HOLMAN OR ONE OF THEIR CO-CONSPIRATORS & SPARKED THE SUBSEQUENT EVENTS.

## PAPER THUG

39. ON NOVEMBER 21, 2024 BETWEEN THE HOURS OF 4PM – 6PM APPROXIMATELY PLAINTIFF WAS AWAKEN BY SERGEANT LOFTIS SAYING: "PACK UP. THEY TOLD ME TO COME GET YOU." PLAINTIFF WAS DISORIENTED FROM BEING JARRED OUT OF HIS SLEEP BY UNKNOW DEPUTIES #1 & #2, DEFENDANT HORTON & DEFENDANT LOFTIS & PLAINTIFF WAS EXTREMELY APPREHENSIVE OF SERGEANT ~~HOLMAN~~ LOFTIS STANDING DIRECTLY INSIDE PLAINTIFFS CELL OUTSIDE OF THE CAMERAS VIEW CONSIDERING HIS PRESENCE & FAILURE TO INTERVENE WHEN PLAINTIFF WAS ASSAULTED BY DEFENDANT HOLMAN. NONTHELESS THIS DIALOGUE ENSUED:

PLAINTIFF(HEREAFTER"P"): I DONT WANT TO BE MOVED & DIDNT ASK TO BE MOVED.

DEFENDANT SERGEANT LOFTIS(HEREAFTER"DSL"): WELL THEY TOLD ME TO COME GET YOU. SO GET THE FUCK UP!

WANT TO GO ANYWHERE IVE ALREADY WRITTEN A GRIEVANCE—
U DIDNT WRITE A GRIEVACE ON ME. NOW COME ON LETS GO(HOLDS OUT HIS TOWARDS P.)

ORTON(HEREAFTER"DH"): MAN HURRY THE FUCK UP!

. DAMN! I JUST WOKE UP. LET ME GET MY SHIT [P TO DSL] & CAN YOU PLEASE STEP CELL? WHY DO YALL KEEP COMING INTO MY CELL? THERE ARE NO CAMERAS & NO REASON FOR YOU TO BE IN HERE. IM COMING OUT.(DSL STEPS OUT OF

E IT TO YOUR ADVANTAGE

HAT?

, NO CAMERAS IN YO CELL.

USE IT TO YOURS

DH: I WILL

41. P: YEAH WHATEVER NIGGA. CAN YA'LL GRAB MY TABLET SO IT DONT GET LOST IN THE SHUFFLE

DH: WE'LL GRAB IT ON THE WAY OUT.

P: YOU CAN GO GRAB IT RIGHT NOW. YOUR LIKE LITERALLY DOING NOTHING BUT STANDING THERE.

DH: DONT TELL ME WHAT TO DO!

P: I JUST DID. GO DO IT.

DH: SO TUFF BUT SCARED TO GO UPSTAIRS.

P: YEAH? WHATEVA PUSSY

DH: ILL BEAT YO ASS!

P: HEIGHT REQUIREMENT LIL NIGGA.

DH: YOU AINT GONE DO NOTHING BUT WRITE A GRIEVANCE.

42. P: NAW. YOU COME IN HERE & TRY TO ATTACK ME & IM NOT IN RESTRAINTS I'M GONE BEAT THE FUCK OUT YOU THEN WRITE A GRIEVANCE.

DEFENDANT HORTON TRIES TO RUSH INTO PLAINTIFF'S CELL & ATTACK HIM. DEFENDANT SERGEANT LOFTIS HOLDS HIM BACK.

DSL: HEY! NO! I KNOW WHAT BITCH MOVE YOUR TRYING TO PULL! YOUR TRYING TO GET ONE OF US TO HIT YOU ON CAMERA! YOUR A PAPER THUG. YOU AINT GONE DO SHIT BUT WRITE A GRIEVANCE. NOW GRAB YOU SHIT & LETS GO!(DSL STEPS BACK IN TO DEFENDANTS PLAINTIFFS CELL OUT OF THE CAMERAS VIEW, PLACES PLAINTIFF IN HANDCUFFS & TRIES TO GRAB HIM.)

P:(JUMPS BACK STARTLED)YOU DONT HAVE TO GRAB ME IM COMPLIANT.

DSL: NOW WHY WOULD I FILTHY MY CLEAN PURE HANDS TOUCHING SOMEONE LIKE YOU?

P: RIGHT.

AS PLAINTIFF WALKS OUT OF HIS WITH HIS FOUR(4) OFFICER ESCORT HE SEES SERGEANT HOLMAN STANDING AT THE OFFICERS BUBBLE STARING & SMIRKING AT PLAINTIFF.

P: CAN ONE OF YA'LL GRAB MY TABLET?

DH: FUCK YO TABLET NIGGA?

DEFENDANT HORTON ASSAULTS & BATTERS PLAINTIFF IN RESTRAINTS

#43. ON NOVEMBER 21, 2024 UPON ENTERING UNIT 2B AFTER BEING ESCORTED FROM UNIT 2C WITHOUT INCIDENT OR RESISTANCE THE FOLLOWING ENSUED: AS PLAINTIFF WALKS INTO THE UNIT HE OBSERVES DEFENDANT ALLEN WRITING SOMETHING BESIDES HIS NAME ON THE WHITE BOARD.

DEFENDANT ALLEN(HEREAFTER"DA"): IS HE ON D-LOCK?

DSL: YUP.

DA: HE CANT HAVE HIS PROPERTY.

DSL: DROP YOUR PROPERTY.

P: I CAN HAVE MY PROPERTY ON D-LOCK.

DEFENDANT HORTON COMMITTED A BATTERY ON PLAINTIFF BY SLAPPING PLAINTIFFS BOX OF PROPERTY OUT HIS HAND & ONTO THE GROUND. THIS BATTERY WAS CAUGHT ON CAMERA.

#44. DEFENDANT HORTON THEN FORCEFULLY PUSHED/GRABBED A NON-RESISTANT PLAINTIFF FROM THE 2B OFFICERS STATION ALL THE WAY INTO THE SECOND TO LAST CELL OF THE SUICIDE DAY ROOM. DEFENDANT HORTON PUSHED PLAINTIFF INTO THE FARTHEST WALL IN THE CELL OUTSIDE THE VIEW OF ANY CAMERAS. DEFENDANT HORTON THEN PLACED HIS HANDS AROUND PLAINTIFFS NECK CHOKING HIM & SAID: "ILL KILL YOU NIGGA." ALTHOUGH PLAINTIFF COULDNT BREATH HE WAS TOO TERRIFIED TO MOVE FOR FEAR THAT ANY MOVEMENT WOULD BE REGARDED AS RESISTANCE & MAKE THE SITUATION WORST. DEFENDANT ALLEN THEN CHARGED INTO THE ROOM & FURTHER PUSHED PLAINTIFF AGAISNT THE WALL WHILE DEFENDANT HORTON CHOKED THE LIFE OUT OF PLAINTIFF.

#45. THE OFFICERS UNKNOW #1 & #2 TRIED TO RUSH IN & JOIN THE ASSAULT HOWEVER SERGEANT LOFTIS STAYED THEM AT THE DOOR. DEFENDANT LOFTIS WHO WAS INITIALLY ALONG UNKNOW DEPUTIES #1 & #2 JUST WATCHING EVENTUALLY PRIED DEFENDANT HORTONS HANDS FROM AROUND PLAINTIFF'S NECK. AS PLAINTIFF WAS BEING RELEASED FROM THE CUFFS DEPUTY HORTON SHOOK HIS HEAD & SAID: "SUICIDAL." PLAINTIFF WAS NOT IN THE HEAD SPACE FOR RIDDLES OR GAMES. PLAINTIFF WAS HUMILIATED EMBARRASSED SAD & SHAMEFUL & PLUS PLAINTIFF HAD HIS CLOTHES & HADNT TOLD ANYONE HE WAS SUICIDAL SO THERE WAS NO WAY HE COULD BE ON SUICIDE WATCH. PLAINTIFF NOTES NO OTHER PERSON(S) SIMILARLY SITUATED TO PLAINTIFF HAS BEEN SUBJECTED TO THIS SAME MISTREATMENT IN THE WHOLE JAIL.

#46. PLAINTIFFS CELL HAD NO BED & NO RUNNING WATER. THE AIR WAS BLOWING SO FORCEFULLY OUT OF THE VENT THAT PLAINTIFF COULD HEAR IT WITH BOTH INDEX FINGERS IN HIS EARS WHILE HUMMING. PLAINTIFF COULD DO NOTHING TO STAY WARM. THE COLD WAS SO OPPRESSIVE IT WAS INSTANTLY TAKING THE [redacted] WARMTH FROM PLAINTIFF'S TEARS AS THEY ROLLED DOWN HIS CHEEKS. I STOPPED DEFENDANTS ACERO & ALLEN ON VIRTUALLY EVERY ROUND THEY MADE ASKING FOR PROPERTY, A BED, COVERS, TISSUE ETC. WHATEVER PLAINTIFF ASKED FOR (EVEN WATER) I WAS TOLD BECAUSE I WAS ON D-LOCK I WAS ENTITLED TO NOTHING. PLAINTIFF HAD TO DEFECATE & NOT WIPE BECAUSE DEFENDANTS ACERO & ALLEN REFUSED TO GIVE PLAINTIFF TISSUE. EVEN AFTER PLAINTIFF EXPLAINED THE FOURTEENTH AMENDMENT TO BOTH DEFENDANTS (NEITHER OF THEM KNEW WHAT IT WAS OR HOW IT WAS APPLICABLE TO PLAINTIFF'S PLIGHT) THEY STILL INSISTED MY RIGHTS WERE PRIVILEGES THAT CAN BE REVOKED AT THEIR WILL.

#47. AT MED LINE DEFENDANT ALLEN INFORMED PLAINTIFF THAT NURSE DEFENDANTS LOHING & MORTON FILED A REPORT STATING THAT PLAINTIFF BANGED HIS HEAD AGAISNT THE GLASS ON HIS CELL DOOR & THATS HOW HE OBTAINED A BLACK EYE. PLAINTIFF WROTE GRIEVANCES ON DEFENDANTS LOHING & MORTON HOWEVER BY DEFENDANT LOHING BEING THE CHARGE NURSE THE GRIEVANCES ULTIMATELY WENT TO HER & WERE CONCLUDED AS "UNFOUNDED". DEFENDANT ALLEN DISCLOSED THIS INFORMATION TO PLAINTIFF IN THE PRESENCE OF NURSE RAMSEY.

48. PLAINTIFF A 6'5" 200+ POUND MAN SLEPT ON A CONCRETE SLAB IN THE FETAL POSITION FOR WARMTH THAT NEVER MATERIALIZED. PLAINTIFF WAS GIVEN A BED APPROXIMATELY 12 HOURS LATER BY DEFENDANT ALLEN WHO ASSURED PLAINTIFF HE BE BACK WITH BLANKETS. PLAINTIFF WAS GIVEN BLANKETS UNTIL THE NEXT SHIFT BY CORPORAL GILBERT WHO SAW PLAINTIFF VISIBLY SHAKING ON HIS MAT (PLAINTIFF TRIED TO GET BACK TO SLEEP HOWEVER THE COLD WAS TOO ARRESTING). DEPUTY GILBERT THEN INFORMED PLAINTIFF THAT HE WAS ON SELF HARM & THATS WHY HE GAVE PLAINTIFF GREEN BLANKETS INSTEAD OF WHITE ONES. PLAINTIFF ASSURED DEPUTY GILBERT HE WASNT SUICIDAL & EXPRESSED NO SUICIDAL IDEATIONS TO ANYONE SO HE SHOULD BE TAKEN OFF SELF HARM. CORPORAL GILBERT INFORMED PLAINTIFF: "SOMEBODY WROTE SELF HARM BY YOUR NAME SO MY HANDS ARE TIED YOU HAVE TO TALK TO MENTAL HEALTH."

49. WHEN MENTAL HEALTH SOCIAL WORKER WADE MADE HIS ROUNDS PLAINTIFF INQUIRED AS TO WHY HE WAS PLACED ON SELF HARM & HE WASNT SUICIDAL. IN SHORT SOCIAL WORKER WADE SAID THAT MENTAL HEALTH WAS NOT RESPONSIBLE FOR PLACING PLAINTIFF ON SELF HARM & HE'D TELL CUSTODY TO TAKE HIM OFF IMMEDIATELY. FURTHERMORE PLAINTIFF WAS INFORMED BY SOCIAL WORKER AHMED THAT CUSTODY DOESNT HAVE THE AUTHORITY TO PLACE AN INMATE ON SELF HARM.

50. ON 11-22-24 PLAINTIFF WAS MOVED TO A CELL IN UNIT 2A WITH NO RUNNING WATER. PLAINTIFFS WATER WASNT TURNED ON UNTIL THE 20TH DESPITE PLAINTIFFS REPEATED ATTEMPS TO HAVE DEFENDANT PIVA TO TURN IT ON. PLAINTIFF WAS NOT GIVEN AN HOUR OUT FOR EXERCISE OR A SHOWER DESPITE REPEATEDLY ASKING DEFENDANTS PIVA & CALDWELL FOR BOTH. PLAINTIFF WAS DENIED HIS TABLET UNTIL THE 25TH. INTERAL AFFAIRS NEVER CAME TO TALK TO PLAINTIFF ABOUT EITHER ASSAULT LEADING PLAINTIFF TO CONCLUDE THAT NO INVESTIGATION WAS DONE & THAT IN ADDITION TO THE AFOREMENTIONED CONSPIRACIES THERE WAS ALSO A CONSPIRACY TO COVER UP THE ASSAULTS AS WELL.

51. ATTATCHED TO COMPLAINT ARE DECLARATIONS FROM OTHER INMATES WHO HAVE BEEN ASSAULTED INSIDE OF THEIR CELLS BY DEFENDANT HOLMAN. THESE ASSAULTS WERE REPORTED HOWEVER INTERNAL AFFAIRS INTERVIEWED NONE OF THE ASSAULT VICTIMS. ALSO ATTACHED ARE 2 PRESERVATION LETTERS & 2 DECLARATIONS FROM INMATE CHILDS.

52. FROM NOVEMBER 26TH - DECEMBER 17TH PLAINTIFF TALKED TO DEFENDANTS CAPTAINS LYNCH, FADLALLAH, UNKNOWN CAPTAIN #1, SERGEANT ANDREWS; LT. LYNCH; HI BAILEY & SOCIAL WORKER WADE, ABOUT BEING ASSAULTED BY SERGEANT HOLMAN. DEFENDANT EXPRESSED TO EACH DEFENDANT ON MULTIPLE OCCASIONS (EXCEPT FOR LT. LYNCH) THAT HE FEARED FOR HIS SAFETY AROUND DEFENDANTS HOLMAN & LOFTIS. PLAINTIFF WROTE A GRIEVANCE ON SERGEANT HOLMAN DAYS BEFORE THE SUBSEQUENT EVENTS FOR RETALIATION. A CODE WAS CALLED TO PLAINTIFFS UNIT BECAUSE ANOTHER INMATE, WHOM PLAINTIFF HAD BEEN TALKING TO PRIOR TO THE CODE, REFUSED TO LOCK DOWN. A NON-PARTY FEMALE SGT. ALONG WITH DEFENDANT HOLMAN & SEVERAL NON-PARTY DEPUTIES RESPONDED TO THE CODE.

53. AS THE OTHER INMATE WAS TALKING TO THE FEMALE SERGEANT PLAINTIFF SAW THE OTHER INMATE WAS HAVING TROUBLE ASKING FOR WHAT HE NEEDED SO PLAINTIFF INTERJECTED TELLIN THE FEMALE SERGEAT: "HE SAID SERGEANT HOLMAN ASSAULTED HIM IN HIS CELL & HE WANTS TO PROSECUTE". SERGEANT HOLMAN THEN TOLD PLAINTIFF: "LOCK THE FUCK DOWN!" PLAINTIFF ASKED: "WHY?" SERGEANT HOLMAN REPLIED "BECAUSE EVERYBODIES LOCKING DOWN". AFTER THE CALVARY LEFT EVERYONE WAS LET BACK OUT FOR YARD EXCEPT FOR PLAINTIFF. DEFENDANT CALDWELL WAS WORKING PLAINTIFFS UNIT THIS DAY. PLAINTIFF ASKED DEFENDANT CALDWELL: "WHY DIDNT YOU OPEN MY DOOR FOR YARD?" DEFENDANT CALDWELL SAID SERGEANT HOLMAN SAID NOT TO LET YOU BACK OUT."

## WAYNE COUNTY

## NURSE LOHING DENIES & LIES AGAIN

59. AFTER BEING IN A HOLDING CELL IN HEALTH CARE FOR HOURS PLAINTIFF WAS INFORMED BY DEFENDANT ANDREWS T[illegible]URSING STAFF INFORMED HER THAT PLAINTIFF HAD REFUSED TREATMENT TO WHI[illegible]AINT[illegible] RESPONDED: "I AM NOT & HAVE NOT REFUSED TREATMENT. HOWEVER I'D LIKE MY IN[illegible] PHOTOGRAPHED & DOCUMENTED BEFORE IM CLEANED UP & MADE TO LOOK AS IF NOTHING HAS HAPPENED." PLAINTIFF, DEFENDANT ANDREWS & 4 OTHER DEPUTIES WERE HUDDLED IN ONE OF THE HOLDING CELLS IN HEALTH CARE WHEN DEFENDANT LOHING WALKED IN. DEFENDANT ANDREWS ASKED PLAINTIFF: "ARE YOU GOING TO LET THE NURSE TREAT YOU?" PLAINTIFF RESPONDED: "YES I'D LIKE TO BE TREATED HOWEVER I WOULD LIKE TO BE PHOTOGRAPHED FIRST." DEFENDANT ANDREWS: "SHE CAN PHOTOGRAPH YOU AFTER SHE CLEANS YOU UP." PLAINTIFF: "SHE CAN TAKE PICTURES AFTER AS WELL IF SHE LIKES HOWEVER I'D LIKE TO BE PHOTOGRAPHED BEFORE IM MADE TO LOOK PRETTY IN FRONT OF A CAMERA. PLUS I'VE BEEN ASSAULTED & RENDERED UNCONSCIOUS I NEED TO GO TO THE HOSPITAL." DEFENDANT LOHING: "DO YOU WANT TO BE SEEN OR NOT?" PLAINTIFF: "YES BUT I'D LIKE YOU TO DO YOUR JOB & REPORT THAT I'VE BEEN ASSAULTED FOR THE THIRD TIME BY STAFF MEMBERS." DEFENDANT LOHING "FORGET HIM!" DEFENDANT LOHING WALKED AWAY WITHOUT GIVING PLAINTIFF SO MUCH AS A BAND AID FOR HIS WOUNDS, LEAVING PLAINTIFF BLOODY & IN PAIN.

59. ON THE ELEVATOR EN ROUTE TO 4A PLAINTIFF MADE DEFENDANT ANDREWS AWARE THAT HE'D BEEN ASSAULTED BY DEFENDANTS HOLMAN & LOFTIS & THAT HE WANTED A PROSECUTION RIGHTS FORM & A WITNESS STATEMENT. DEFENDANT ANDREWS IGNORED PLAINTIFF HOWEVER SHE RESPONDED "IT LOOKED FINE" WHEN PLAINTIFF COMPLAINED THAT HIS ARM FELT LIKE IT WAS BROKEN. PLAINTIFF AGAIN INQUIRED ABOUT A PROSECUTION RIGHTS FORM & A WITNESS STATEMENT TO PROSECUTE HIS ATTACKS. DEFENDANT ANDREWS AGAIN IGNORED PLAINTIFF & LEFT HIM LIKE DEFENDANT LOHING BLOODY & IN PAIN.

## FICTICIOUS STAFF ASSAULT

60. ON DECEMBER [redacted] 19, 2024 AT APPROXIMATELY 11 AM PLAINTIFF WAS HEARD ON AN ASSAULT ON STAFF INCIDENT REPORT WRITTEN BY DEFENDANT THOMAS STATING PLAINTIFF ASSAULTED DEFENDANT HOLMAN. NOT ONLY DID THIS ASSAULT NEVER HAPPEN THE INCIDENT REPORT MADE IT SEEM AS IF DEFENDANTS LOFTIS & HOLMAN WERE THE ONLY [redacted] TWO OFFICERS ON THE SCENE & IT DIDNT EXPLAIN PLAINTIFF'S MULTIPLE INJURIES OR HIS CHIPPED TOOTH & AS A RESULT PLAINTIFF WAS FOUND NOT GUILTY & GIVEN NO SANCTION DAYS. PLAINTIFF WAS STILL PLACED ON MAX AS IF HE'D BEEN FOUND GUILTY. NO VALID REASON WAS GIVEN TO PLAINTIFF AS TO WHY HE WAS PLACED ON MAX BUT PLAINTIFF WAS TOLD IT WAS DEFENDANT DENNIS WHO PLACED PLAINTIFF ON MAX BECAUSE HE FELT PLAINTIFF HAD 'ESCAPED' THE ASSAULT ON STAFF MISCONDUCT. PLAINTIFF HAS BEEN PHYSICALLY, MENTALLY & EMOTIONALLY SCARRED BY THESE EVENTS & WILL SUFFER LIFELONG TRAUMA. PLAINTIFF HAS EXPERIENCED LACK OF SLEEP BECAUSE OF NIGHTMARES FROM THESE EVENTS AS WELL AS IMMOBILIZING FLASHBACKS.

61. ON DECEMBER 21ST 2024 PLAINTIFF WAS SENT OUT TO DETROIT'S RECIEVING HOSPITAL. PLAINTIFF HAD BEEN ASKING TO SEE A DOCTOR SINCE THE 19TH BECAUSE PLAINTIFF COULDNT STAND WITHOUT GETTING DIZZY, PLAINTIFF WAS VOMITING AT LEAST TWICE A DAY, PLAINTIFF COULDNT EAT, & PLAINTIFF HAD A MIGRAINE THAT WAS SO SENSITIVE TO LIGHT PLAINTIFF COULDNT OPEN HIS RIGHT EYE. PLAINTIFF WAS GIVEN A CT SCAN AT RECIEVING HOSPITAL WHICH SHOWED NO BLEEDING IN THE BRAIN HOWEVER PLAINTIFF WAS INFORMED THAT HE HAD A CONCUSSION. THE CONCUSSION SUBSIDED 3 OR 4 DAYS LATER HOWEVER PLAINTIFF STILL EXPERIENCES MIGRAINES. PLAINTIFF HAS PUT IN 20 PLUS MENTAL HEALTH KITES ABOUT HAVING FLASHBACKS & NIGHTMARES AS WELL AS PARINOIA STEMMING FROM THE ASSAULTS THAT KEEPS PLAINTIFF UP FOR DAYS AT A TIME BECAUSE PLAINTIFF IS AFRAID TO GO TO SLEEP MOST NIGHTS. MENTAL HEALTH HAS GIVEN PLAINTIFF NO TREATMENT TO DATE.

MARTEZ DWIGHT MCKEE (PLAINTIFF) MARTEZ DWIGHT MCKEE

V.

WAYNE COUNTY (DEFENDANTS) ET AL.

## DEFENDANTS HOLMAN & LOFTIS ASSAULT PLAINTIFF IN RESTRAINTS

54. ON DECEMBER 18 2024 AT APPROXIMATELY [illegible]00 PM – 1[illegible] PM IN UNIT 4 I1 PLAINTIFF WAS PLAYING CHESS WITH WHAT HE THOUGHT WAS A GOOD FRIEND. PLAINTIFF WON 3 GAMES IN A ROW AND AN ARGUMENT ENSUED. DEFENDANT THOMAS THEN STEPPED INSIDE OF THE CELL & ASKED: "WHATS GOING ON IS EVERYTHING OK?" TO WHICH PLAINTIFF & OTHER INMATE RESPONDED MULTIPLE TIMES: "EVERYTHING WAS FINE & WE WERE JUST ARGUING OVER CHESS. DEPUTY THOMAS LEFT & THE ARGUEMENT ABOUT CHESS CEASED HOWEVER DEFENDANT THOMAS INSISTED SOMETHING WAS AMISS EVEN AFTER REPEATEDLY BEING TOLD: "EVERYTHING WAS FINE & NOBODIES EVEN ARGUING ANYMORE." DEFENDANT THOMAS THEN SAID: "I DONT LIKE THE WAY THESE GUYS ARE LOOKING AT YOU." PLAINTIFF LOOKED AROUND. EVERYONE WAS LOOKING NORMAL. PLAINTIFF RESPONDED: THOMAS YOUR TRIPPING. EVERYTHINGS COOL. IM NOT IN FEAR FOR MY SAFETY. IM LITTERALLY THE BIGGEST GUY IN THIS ROOM. IM GOOD." THOMAS AGAIN LEFT THE CELL.

55. PLAINTIFF NOTES THAT DEFENDANT THOMAS STATES HE SPECIFICALLY CALLED DEFENDANTS LOFTIS & HOLMAN TO THE SCENE. EVERY DEPUTY IN THE JAIL WAS AWARE OF PLAINTIFF'S ALLEGATIONS OF ASSAULT LODGE AGAISNT DEFENDANT HOLMAN. MORE IMPORTANTLY PLAINTIFF & DEFENDANT THOMAS HAD JUST TALKED ABOUT THE NOV 20TH – 21ST ASSAULTS AMONGST OTHER THINGS EARLIER IN DEFENDANT THOMAS' SHIFT. DEFENDANTS LOFTIS & HOLMAN AS WELL AS UNKNOWN DEPUTIES #3, #4, #5 & #6 WERE CALLED TO PLAINTIFFS CELL. NONE OF THESE OFFICERS STOOD AT THE DOORS ENTRANCE & ASK PLAINTIFF TO EXIT THE CELL THEY ALL STEPPED INSIDE OF PLAINTIFF'S CELL OUTSIDE OF THE CAMERAS VIEW. PLAINTIFF WAS ORDERED TO LIE ON THE GROUND BY DEFENDANTS LOFTIS & HOLMAN. WHEN PLAINTIFF TRIED TO REASON WITH DEFENDANTS STATING: "IVE DONE NOTHING WRONG. IM NOT BEING AGGRESSIVE & EVERYTHINGS FINE." PLAINTIFF WAS TOLD TO STOP BEING AGGRESSIVE & GET ON THE GROUND.

56. DEFENDANTS LOFTIS & HOLMAN THEN RUSHED PLAINTIFF PUNCHING & THROWING HIM TO THE GROUND. DEFENDANT LOFTIS KEPT HOLD OF PLAINTIFF'S LEFT ARM AS HE WAS FALLING BENDING IT TO THE POINT IT FELT AS IF IT WAS BROKEN DURING & AFTER THE INCIDENT. PLAINTIFFS LEFT HAND WAS SO FORCEFULLY PLACED IN CUFFS IT TO FELT AS IF IT WAS BROKEN DURING & AFTER THE INCIDENT. AS PLAINTIFF LAY PINNED ON THE GROUND BY 3 OR 4 OFFICERS PLAINTIFF REALIZED NOONE WAS EVEN TRYING TO GRAB & CUFF HIS RIGHT ARM THEY WERE TO PREOCCUPIED WITH STOMPING PUNCHING & KICK A NOW TOTALLY SUBDUED PLAINTIFF. PLAINTIFF REPEATEDLY SCREAMED: "HELP!" "I CANT BREATH!" "YA'LL GONE KILL ME!" PLAINTIFF THEN FELT AN EXCRUCIATING PAIN IN HIS BACK THEN 10 TO 15 SECONDS LATER PLAINTIFF DOUBLE THAT PAIN. PLAINTIFF KNEW FORSURE HE WAS CLOSE TO DEATH & TRIED TO CRAWL OUT OF HIS CELL WITH HIS FREE ARM SO HE COULD DIE ON CAMERA. PLAINTIFF ENDED UP BLACKING OUT FROM THE PAIN OF DEFENDANTS LOFTIS & HOLMAN SIMULTANEOUSLY TASING HIM.

57. WHEN PLAINTIFF WOKE UP HE WAS PUNCHED IN HIS RIGHT EYE & KICKED SO HARD IN HIS FACE HE PASSED OUT AGAIN. WHEN PLAINTIFF NEXT WOKE HE WAS IN HEALTH CARE LAYING IN A POOL OF HIS OWN BLOOD WITH BLOOD DRENCHING THE WHOLE LEFT SIDE OF HIS BEARD. PLAINTIFF WAS SO DISORIENTED & CONFUSED. THE KICK NOT ONLY KNOCKED PLAINTIFF OUT IT CHIPPED ONE OF HIS FRONT TEETH. PLAINTIFF WHOSE TEETH WERE HIS MOST PRIZED POSSESSION WAS & STILL IS DEVASTATED FROM THE LOST OF A SIGNIFICANT CHUNK OF HIS TOOTH. PLAINTIFF'S TEETH WERE PERFECT. PLAINTIFF TOOK PRIDE IN HIS SMILE & TOOK EXCEPTION CARE OF HIS TEETH BECAUSE HE KNEW EVEN AT A YOUNG AGE HIS TEETH WAS HIS MOST DISTINGUISHING FEATURE. PLAINTIFF LOOKS & FEELS UTTERLY RIDICULOUS & CONSIDERING THAT THE TEETH ARE THE ONLY PART OF THE HUMAN BODY THAT CANNOT HEAL THEMSELVES PLAINTIFF MAY NEVER BE MADE WHOLE.

# CLAIMS

## COUNT 1: CIVIL CONSPIRACY (1ST CONSPIRACY)

1. A CIVIL CONSPIRACY UNDER 1983 IS AN AGREEMENT BETWEEN TWO OR MORE PERSONS TO INJURE ANOTHER BY UNLAWFUL ACTION. (5) THE PLAINTIFF MUST SHOW THE EXISTENCE OF A SINGLE PLAN THAT THE ALLEGED COCONSPIRATOR SHARED IN THE GENERAL CONSPIRATORIAL OBJECTIVE TO DEPRIVE THE PLAINTIFF OF A FEDERAL RIGHT & THAT AN OVERT ACTION COMMITTED IN FURTHERANCE OF THE CONSPIRACY CAUSED AN INJURY TO THE PLAINTIFF. (6) MOREOVER, A PLAINTIFF MUST PLEAD A CONSPIRACY WITH PARTICULARITY, AS VAGUE AND CONCLUSORY ALLEGATIONS UNSUPPORTED BY MATERIAL FACTS ARE INSUFFICIENT. (7)

## SINGLE PLAN

2. 1ST CONSPIRACY DEFENDANTS ARE DEFENDANTS ALLEN, COX, HOLMAN, LOFTIS, AL-WOSARI & HULL. THE AGREEMENT TO CARRY OUT THE SINGLE PLAN WAS MADE INSIDE OF UNIT 28'S BUBBLE BY ALL AFOREMENTION DEFENDANTS WHO ARE CO-WORKERS &/OR FRIENDS. ALL DEFENDANTS MADE THIS AGREEMENT BECAUSE DEFENDANT ALLEN FELT THREATEN, DISRESPECTED & EMBARRASSED BY PLAINTIFF & BECAUSE DEFENDANTS AS CO-WORKER HAVE AN UNSPOKEN CODE TO SUPPORT EACH OTHERS ACTIONS REGARDLESS OF IF THOSE ACTIONS INFRINGE UPON THE CONSTITUTIONAL RIGHTS OF THE INMATE POPULATION.

3. 1ST CONSPIRACY DEFENDANTS PLAN WAS TO KEEP PLAINTIFF IN TOO TIGHT HANDCUFFS UNTIL DEFENDANT ALLEN SAID IT WAS OK TO RELEASE HIM.

## GENERAL CONSPIRATORIAL OBJECTIVE

4. TO PUNISH PLAINTIFF FOR INTIMIDATING & EMBARRASSING DEFENDANT ALLEN &OR CALLING HIM A "PUSSY". THIS THEORY IS PREMISED ON THE FACT THAT DEFENDANT ALLEN WAS PUNISHING PLAINTIFF FOR INTIMIDATING & EMBARRASSING HIM &/OR CALLING HIM A PUSSY. DEFENDANTS BROWN & AL-WOSARI & HULL WERE AWARE OF DEFENDANT ALLENS REASONING & OBJECTIVE TO PUNISH PLAINTIFF BECAUSE BOTH DEFENDANTS WERE PRESENT WHEN THE INCIDENTS GIVING RISE TO THE REASONING & OBJECTIVE TRANSPIRED. CAMERA FOOTAGE WILL SHOW DEFENDANTS HULL, AL-WOSARI, ALLEN & COX CONFERRING ABOUT THE INCIDENTS GIVING RISE TO DEFENDANT ALLENS REASONING & OBJECTIVE. THIS PROVES DEFENDANT COX WAS AWARE OF DEFENDANT ALLENS REASONING & OBJECTIVE. A STATEMENT MADE BY DEFENDANT LOFTIS (8) SHOWS THAT NOT ONLY WAS HE & DEFENDANT HOLMAN AWARE OF DEFENDANT ALLENS REASONING & OBJECTIVE, BUT THAT THEY ALSO INTENDED TO DISCIPLINE PLAINTIFF BEFORE HE WAS EVEN GIVEN A DISCIPLINARY HEARING. PLAINTIFF ADMITS DEFENDANTS AWARENESS ALONE DOESNT GIVE RISE TO A GENERAL CONSPIRATORIAL OBJECTIVE HOWEVER COUPLED WITH DEFENDANT'S FAILURE TO INTERVE & EXCUTING AN OVERT ACTION MAKES ALLENS OBJECTIVE THE GENERAL CONSPIRATORIAL OBJECTIVE.

## OVERT ACT

5. THE OVERT ACT COMMITTED IN FURTHERANCE OF THE CONSPIRACY WAS FOR DEFENDANTS TO LIE ABOUT BEING ABLE TO RELEASE PLAINTIFF FROM CUFFS OR DENY & IGNORE PLAINTIFFS REQUEST TO BE RELEASED FROM THE TOO TIGHT HANDCUFFS.

## PRAYER 4 RELIEF

6. PLAINTIFF ASKS THAT ALL 1ST CONSPIRACY DEFENDANTS BE MADE TO PAY THE SUBSEQUENT DAMAGES TO PLAINTIFF IN THEIR INDIVIDUAL CAPACITIES FOR THE PHYSICAL, MENTAL & EMOTIONAL PAIN & SUFFERING AS WELL AS THE CONSTITUTION DEPRAVATIONS ALLEGED, PROVEN, & OR INFFERED STEMMING FROM THEIR PARTICIPATION IN THE 1ST CONSPIRACY, IRRESPECTIVE OF ANY ADDITIONAL CLAIMS PLAINTIFF MAY BRING AGAISNT ANY PARTICIPANT INDIVIDUALLY OR FOR PARTICIPATING IN ANY ADDITIONAL CONSPIRACIES.

7. PLAINTIFF SEEKS $15,000 IN COMPENSATORY DAMAGES FROM EACH INDIVIDUAL DEFENDANT; $50,000 IN PUNITIVE DAMAGES FROM EACH INDIVIDUAL DEFENDANT; & ANY OTHER FORM OF COMPENSATION THE COURT DEEMS APPROPRIATE. PLAINTIFF NOTES THAT A NON-STATUATORY INDEMNIFICATION AGREEMENT (CONTRACT) MAY EXIST BETWEEN 1ST CONSPIRACY DEFENDANTS & THEIR EMPLOYER & OR INSURERS. IF SO PLAINTIFF ASKS THIS COURT TO EXPOSE & ENFORCE THIS AGREEMENT ON BEHALF OF THE PLAINTIFF

V.

WAYNE COUNTY(DEFENDANTS) ET AL.

# CLAIMS(CONT.)

## COUNT 2

### SUPEVISOR LIABILITY(FAILURE TO SUPERVISE)

8. GOVERNMENT OFFICIALS MAY NOT BE HELD LIABLE FOR THE UNCONSTITUTIONAL CONDUCT OF THEIR SUBORDINATES UNDER THE THEORY THAT THE SUPERVISOR IS LIABLE BECAUSE THEY WERE CHARGED WITH SUPERVISING A SUBORDINATE WHO VIOLATED THE CONSTITUTION.(9) A MERE FAILURE TO ACT WILL NOT SUFFICE TO ESTABLISH SUPEVISORY LIABILITY.(10) SOME "ACTIVE UNCONSTITUTIONAL BEHAVIOR" IS REQUIRED ON THE PART OF THE SUPERVISOR. A SUPERVISORY OFFICIALS FAILURE TO SUPERVISE, CONTROL, OR TRAIN THE OFFENDING IS NOT ACTIONABLE UNLESS THE SUPERVISOR EITHER ENCOURAGED THE SPECIFIC INCIDENT OF MISCONDUCT OR IN SOME OTHER WAY DIRECTLY PARTICIPATED IN IT.(11) THIS MEANS THAT "AT A MINIMUM" THE PLAINTIFF MUST SHOW THAT THE DEFENDANT "AT LEAST IMPLICITLY AUTHORIZED, APPOVED, OR KNOWINGLY ACQUIESCED IN THE UNCONSTITUTIONAL CONDUCT OF THE OFFENDING OFFICERS.(12)

9. IT GOES WITHOUT SAYING THAT DEFENDANTS [redacted] LOFTIS & HOLMAN WERE AWARE THAT DEFENDANT ALLEN HAD LEFT PLAINTIFF IN HANDCUFFS FOR HOURS. FURTHERMORE PLAINTIFF ASKED BOTH DEFENDANTS TO RELEASE HIM FROM THE HANDCUFFS BECAUSE THEY WERE TOO TIGHT. BOTH DEFENDANTS DENIED PLAINTIFFS REQUEST & FAILED TO REPRIMAND DEFENDANT ALLEN FOR UNCONSTITUTIONALLY SUBJECTING PLAINTIFF TO WEARING TOO TIGHT HANDCUFFS FOR HOURS. THUS MAKING THE LIABLE FOR FAILURE TO SUPERVISE

### PRAYER 4 RELIEF

10. PLAINTIFF ASKS THIS COURT TO GRANT HIM A SUM OF $10,000 IN COMPENSATORY DAMAGES & $100,000 IN PUNITIVE DAMAGES AGAISNT DEFENDANTS LOFTIS & HOLMANS INDIVIDUAL CAPACITY. PLAINTIFF NOTES THAT A NON-STATUATORY CONTRACTUAL INDEMNIFICATION AGREEMENT MAY EXIST BETWEEN DEFENDANTS & THEIR EMPLOYERS &/OR INSURERS. IF SO PLAINTIFF ASKS THE COURT TO EXSPOSE & ENFORCE THIS AGREEMENT.

## COUNT 3

### CIVIL CONSPIRACY(2ND CONSPIRACY)

### SINGLE PLAN

11. 2ND CONSPIRACY DEFENDANTS ARE DEFENDANTS ARE DEFENDANTS SHEBLY, CARLSON, DYERS, BENDER, DEBONO, UNKNOW CORPORAL #1, LOFTIS, HOLMAN, FADLALLAH, ACERO, ALLEN, HORTON, & UNKNOW DEPUTIES #1 & #2. THIS PLAN WAS MADE ONCE DEFENDANTS CAME INTO WORK & REALIZED PLAINTIFF HAD WRITTEN A WITNESS STATEMENT & FILLED OUT A PROSECUTOR RIGHTS FORM. THE SINGLE PLAN OF THE 2ND CONSPIRACY WAS TO PREVENT &/OR DETER PLAINTIFF FROM FILING A GRIEVANCE. PLAN WAS MADE TO PROTECT THEIR CO-WORKER & FRIEND DEFENDANT HOLMAN.

### GENERAL CONSPIRATORIAL OBJECTIVE

12. THE GENERAL CONSPIRATORIAL OBJECTIVE FOR THE 2ND CONSPIRACY WAS TO PUNISH PLAINTIFF FOR REPORTING A STAFF ASSAULT. ONCE DEFENDANTS CAME TO WORK THAT MORNING & LEARNED THAT THE PLAINTIFF HAD REPORTED THE NOV. 20TH ASSAULT THE PLAN & OBJECTIVE WAS MADE CLEAR. PLAINTIFF WAS PUNISHED BY DEFENDANT DEBONO(WHO PRIOR TO THE REPORTING HAD NEVER BEEN CROSS WITH PLAINTIFF) WHEN HE SLAPPED HIS CUFFS SO HARD ON PLAINTIFFS WRIST THAT PLAINTIFF SCREAMED IN PAIN. & WHEN HE THREW PLAINTIFFS PROPERTY AROUND TOOK PLAINTIFFS EXTRA BLANKETS. WHEN PLAINTIFF REMINDED DEFENDANT DEBONO DEBONO "YOUR THE ONE WHO GAVE ME THE EXTRA BLANKETS." DEFENDANT DEBONO RESPONDED: "I KNOW. YOU CAN KEEP THE EXTRA COVERS." HOWEVER PLAINTIFF WAS NEVER GIVEN THE EXTRA BLANKETS BACK.

13. WHEN PLAINTIFF REPORTED TO DEFENDANT BAILEY AT THE MISCONDUCT HEARING THAT HE'D BEEN ASSAULTED BY A STAFF MEMBER PLAINTIFF WAS PUNISHED BY DEFENDANTS DEBONO, BENDERS, SHELBY, DYERS, CARLSON & UNKNOW CORPORAL #1(ALL OF WHO, EXCEPT FOR DEFENDANT DEBONO, PLAINTIFF HAD HAD NO PRIOR INTERACTIONS WITH) WHEN HE WAS DENIED ACCESS TO HIS TABLET TO WRITE A GRIEVANCE, USE LAW LIBRARY, OR ORDER COMMISSARY. PLAINTIFF REPORTED TO DEFENDANT HOLMAN HE D ASSAULTED HIM DEFENDANT HOLMAN PUNISHED PLAINTIFF BY VERBALLY ASSAULTING HIM & BROADCASTING FOR EVERYONE TO HEAR THAT PLAINTIFF "FUCKS CHILDREN." WHEN PLAINTIFF WAS REPORTING OUT OF HIS CELLS SLOT THAT HE WAS ASSAULTED BY A STAFF MEMBER & ASKED NON-PARTY DEPUTY ECHOLS TO REPORT THIS ASSAULT TO DEFENDANT FADLALLAH, DEFENDANT FADLALLAH CALLED DEFENDANT HOLMAN WHO ORCHESTRATED A PLAN TO HAVE PLAINTIFF PUNISHED BY MOVING HIM FROM G-UNIT BACK TO B-UNIT WHERE HE WAS ULTIMATELY ASSAULTED TWICE.

MARTEZ DWIGHT MCKEE (PLAINTIFF) MARTEZ DWIGHT MCKEE

V.

WAYNE COUNTY (DEFENDANTS) ET AL.

## CLAIMS (CONT.)

### OVERT ACT

14. THE OVERT ACT COMMITTED IN FURTHERANCE OF THE 2ND CONSPIRACY WAS PLAINTIFF FRAUDULENTLY BEING PLACED ON SELF HARM STATUS. BY PLACING PLAINTIFF ON SELF HARM STATUS DEFENDANTS CREATED A LEGITIMATE REASON TO DENY PLAINTIFF PAPER & PENCIL & HIS TABLET TO WRITE A GRIEVANCE.

### PRAYER 4 RELIEF

15. PLAINTIFF ASKS THAT ALL SECOND CONSPIRACY DEFENDANTS BE MADE TO PAY THE SUBSEQUENT DAMAGES TO PLAINTIFF IN THEIR INDIVIDUAL CAPACITIES FOR PAST PHYSICAL, MENTAL & EMOTIONAL PAIN & SUFFERING & FUTURE MENTAL & EMOTIONAL PAIN & SUFFERING, AS WELL AS ALL CONSTITUTIONAL DEPRAVATIONS ALLEDGED PROVEN & UNFILED STEMMING FROM THEIR PARTICIPATION IN THE 2ND CONSPIRACY. IRRESPECTIVE OF ANY ADDITIONAL CLAIMS PLAINTIFF MAY BRING AGAISNT ANY PARTICIPANT INDIVIDUALLY OR FOR PARTICIPATING IN ANY ADDITIONAL CONSPIRACIES.

16. PLAINTIFF SEEKS $25,000 IN COMPENSATORY DAMAGES FROM EACH INDIVIDUAL DEFENDANT, $200,000 IN PUNITIVE DAMAGES FROM EACH INDIVIDUAL DEFENDANT & ANY OTHER FORM OF COMPENSATION THE COURT DEEMS APPROPRIATE. PLAINTIFF NOTES THAT A NON-STATUATORY CONTRACTUAL INDEMNIFICATION AGREEMENT MAY EXIST BETWEEN 2ND CONSPIRACY DEFENDANTS [redacted] & THEIR EMPLOYER &/OR INSURERS. IF SO PLAINTIFF ASKS THIS COURT TO EXPOSE & ENFORCE THIS AGREEMENT ON BEHALF OF THE PLAINTIFF.

## COUNT 4

## CIVIL CONSPIRACY (3RD CONSPIRACY)

### SINGLE PLAN (FALSIFIED NURSING REPORT)

17. PLAINTIFF BELIEVES THE THIRD CONSPIRACIES SINGLE PLAN WAS CONCOCTED A DAY AFTER THE NOVEMBER 20TH ATTACK ON THE AFTERNOON SHIFT GIVEN THE FACT THAT THAT SAME MORNING DEFENDANT LOHING MADE NO MENTION OF PLAINTIFF BANGING HIS FACE ON HIS CELL [redacted] WINDOW. WITH THAT BEING SAID PLAINTIFF BELIEVES DEFENDANT [redacted]S HOLMAN & ALLEN WENT TO NURSE LOHING & INSTRUCTED HER TO FALSIFY A NURSING REPORT STATING THE PLAINTIFF BANGED HIS HEAD AGAISNT HIS WINDOW & GAVE HIMSELF A BLACK EYE. THIS IS HOW PLAINTIFF WAS ABLE TO BE PLACED ON SELF HARM WITHOUT MENTAL HEALTH BEING AWARE. DEFENDANT MORTON TOLD PLAINTIFF SHE HELPED DEFENDANT LOHING WRITE THE REPORT.

### GENERAL CONSPIRATORIAL OBJECTIVE

18. THE OBJECTIVE WAS 3 FOLD. 1. TO MAKE PLAINTIFF LOOK LIKE A LIAR. 2. TO COVER UP FOR THE FACT THAT NURSE LOHING DENIED PLAINTIFF TREATMENT FOR HIS INJURIES & FAILED TO FOLLOW PROPER PROTOCOL. & 3. TO HINDER &/OR INTERFERE WITH THE ASSAULT INVESTIGATION BY OFFERING AN EYE WITNESS ALTERNATIVE TO EXPLAIN PLAINTIFF'S BLACK EYE

### OVERT ACT

19. PLAINTIFF WROTE SEVERAL HEALTH CARE GRIEVANCES IN REGARDS TO THIS MATTER. HOWEVER ALL OF PLAINTIFF'S GRIEVANCES WERE ANSWERED BY DEFENDANT LOHING BECAUSE SHE IS THE CHARGE NURSE. ALL PLAINTIFFS GRIEVANCES WERE DEEMED UNFOUNDED.

### PRAYER 4 RELIEF

20. PLAINTIFF ASKS THIS COURT TO GRANT HIM A SUM OF [redacted] $50,000 IN COMPENSATORY DAMAGES & 75,000 IN PUNITIVE DAMAGES AGAISNT EACH INDIVIDUAL IN THEIR INDIVIDUAL CAPACITIES AS WELL AS ANY FORM OF COMPENSATION THIS COURT DEEMS APPROPRIATE.

21. PLAINTIFF NOTES THAT A NON-STATUATORY CONTRACTUAL INDEMNIFICATION AGREEMENT MAY EXIST BETWEEN DEFENDANTS & THEIR EMPLOYERS &/OR INSURERS. IF SO PLAINTIFF ASKS THIS COURT TO [redacted] UNEARTH & ENFORCE THIS AGREEMENT ON PLAINTIFF'S BEHALF.

V.

WAYNE COUNTY (DEFENDANTS) ET AL.

# CLAIMS (CONT.)

## COUNT 5

## CIVIL CONSPIRACY (4TH CONSPIRACY)

### SINGLE PLAN

22. 4TH CONSPIRACY DEFENDANTS ARE DEFENDANTS THOMAS, LOFTIS & HOLMAN. THIS PLAN WAS MADE SOMETIME AFTER THE DECEMBER 19, 2024 ASSAULT BY THE AFOREMENTIONED DEFENDANTS & WAS MADE IN AN ATTEMPT TO COVER UP FOR THE FACT THAT PLAINTIFF WAS ACTUALLY ASSAULTED & NOT THE ASSAULTEE. & TO GIVE DEFENDANTS LOFTIS & HOLMAN LEVERAGE OVER PLAINTIFF. IF PLAINTIFF WOULD HAVE BEEN FOUND GUILTY OF THE FALSE MISCONDUCT HE WOULD HAVE BEEN PROSECUTED CRIMINALLY AT WHICH POINT DEFENDANTS LOFTIS & HOLMAN WOULD HAVE OFFERED TO DROPP THE CRIMINAL CHARGES IF PLAINTIFF AGREED TO NOT PURSUE CRIMINAL CHARGES IN THE NOV. 20 INCIDENT. THE SINGLE PLAN WAS TO FALSIFY A MISCONDUCT REPORT.

### GENERAL CONSPIRATORIAL OBJECTIVE

23. TO GET PLAINTIFF PROSECUTED FOR STAFF ASSAULT.

### OVERT ACT

24. THE SPECIFIC FALSITIES TOLD IN INCIDENT REPORT.

[redacted]

### PRAYER 4 RELIEF

25. PLAINTIFF ASKS THIS TO GRANT HIM A SUM OF $100,000 IN COMPENSATORY DAMAGES & $300,000 IN PUNITIVE DAMAGES AGAINST EACH INDIVIDUAL 4TH CONSPIRACY DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES IRRESPECTIVE OF ANY ADDITIONAL CLAIMS PLAINTIFF MAY BRING AGAINST THESE DEFENDANTS INDIVIDUALLY OR FOR PARTICIPATING IN ANY ADDITIONAL CONSPIRACIES.

26. PLAINTIFF NOTES THAT A NON-STATUATORY CONTRACTUAL IDEMNIFICATION AGREEMENT MAY EXIST BETWEEN THE 4TH CONSPIRACY DEFENDANTS & THIER EMPLOYER &/OR INSURER. IF SO PLAINTIFF ASKS THIS COURT TO UNEARTH & ENFORCE THIS AGREEMENT ON PLAINTIFF'S BEHALF.

# WAYNE COUNTY DEFENDANTS

## MONELL LIABILITY

27. IN MONELL, THE SUPREME COURT HELD THAT MUNICIPALITIES CAN BE TREATED AS "PERSONS" & SUBJECT TO § 1983 LIABILITY. (13) BUT A MUNICIPALITY CANNOT BE LIABLE FOR § 1983 DEPRAVATIONS MERELY BECAUSE THEY EMPLOY AN OFFICER WHO VIOLATES § 1983. (14) A MUNICIPALITY CANNOT BE HELD LIABLE UNDER § 1983 ON A RESPONDENT SUPERIOR THEORY. AND A MUNICIPALITY CANNOT BE LIABLE IF THEIR OFFICERS COMMIT NO CONSTITUTIONAL VIOLATION IN THE FIRST PLACE. (15)

28. MUNICIPALITIES ARE ONLY LIABLE UNDER MONELL FOR THEIR "OFFICIAL POLICIES" WHICH CAUSE THE VIOLATION OF A PERSONS CONSTITUTIONAL RIGHTS. (16) GENERALLY, THERE ARE FOUR "AVENUES A PLAINTIFF MAY TAKE TO PROVE THE EXISTENCE OF A [DEFENDANTS'] ILLEGAL POLICY OR CUSTOM. THE PLAINTIFF CAN LOOK TO (1) THE [DEFENDANTS'] LEGISLATIVE ENACTMENTS OR OFFICIAL AGENCY POLICIES; (2) ACTIONS TAKEN BY OFFICIALS WITH FINAL DECISION-MAKING AUTHORITY; (3) A POLICY OF INADEQUATE TRAINING OR SUPERVISION; OR (4) A CUSTOM OF TOLERANCE OR ACQUIESCENCE OF FEDERAL RIGHTS VIOLATIONS." (17) BUT EVEN WHEN A PLAINTIFF CAN SHOW A SUFFICIENT OFFICIAL POLICY, A PLAINTIFF MUST ALSO "CONNECT THE POLICY TO THE MUNICIPALITY, & SHOW THAT THE PARTICULAR INJURY WAS INCURRED DUE TO THE EXECUTION OF THAT POLICY. (18)

## OFFICIAL POLICY

29. CLAIMS BASED ON OFFICIAL POLICIES "MUST" IDENTIFY THE POLICY, CONNECT THE POLICY TO THE ENTITY [ITSELF] & SHOW THAT THE PARTICULAR INJURY WAS INCURRED BECAUSE OF THE EXECUTION OF THAT POLICY. (19) WHERE THE IDENTIFIED POLICY IS ITSELF FACIALLY LAWFUL, THE PLAINTIFF MUST DEMONSTRATE THAT THE MUNICIPAL ACTION WAS TAKEN WITH "DELIBERATE INDIFFERENCE" AS TO IT'S KNOWN OR OBVIOUS CONSEQUENCES." (20)

MARTEZ DWIGHT MCKEE (PLAINTIFF) MARTEZ DWIGHT MCKEE

V.

WAYNE COUNTY (DEFENDANT) ET AL.

COUNT 6

MONELL CLAIM (OFFICIAL POLICY)

30. DEFENDANTS HAVE AN OFFICIAL POLICY IN PLACE THAT ALLOWS A DEPUTY TO ENTER INTO A CELL AL-READY OCCUPIED BY AN INMATE REGARDLESS OF IF THE INMATE IS ALREADY IN RESTRAINTS & NOT BEING EXTRACTED FROM THE CELL, AS LONG AS ANOTHER DEPUTY IS STANDING OUT-SIDE OF THE CELL. THIS INFLEXIBLE POLICY WAS THE MOVING FORCE BEHIND PLAINT-IFF BEING ASSAULTED WHILE HANDCUFFED & INSIDE OF HIS CELL ON NOVEMBER 20, 2-024 BY DEFENDANT HOLMAN. NOT ONLY WAS THIS POLICY THE MOVING FORCE BEHIND PLAI-NTIFF BEING ASSAULTED THIS POLICY ASSISTED DEFENDANT HOLMAN IN CONCEALING HIS ASSAULTIVE BEHAVIOR. DEFENDANT HOLMAN KNEW HE COULD STEP INTO PLAINTIFFS CELL WHILE HE WAS ALREADY RESTRAINED & ASSAULT PLAINTIFF WHILE HIS CO-WORK-ERS (WHO WERE PRESENT [PER POLICY AS SAFEGAURDS] & FAILED TO INTERVENE IN OR REPORT THE ASSAULT) WATCHED & GET AWAY WITH IT BECAUSE THIS POLICY ALLOWED HIM TO DO IT BEFORE.

31. FURTHERMORE DEFENDANTS HAVE A DUTY WHICH IS HEIGTENED BY THE "SPECIAL RELATIONSHIP" (21) THAT EXIST BETWEEN PLAINTIFF & DEFENDANT TO NOT ONLY PROTECT PLAINTIFF FROM HIMSELF & OTHER INMATES, BUT TO TAKE THE NECESSARY PRECAUTIONS TO ENSURE PLAINTIFF THAT PLAINTIFF IS SAFE FROM HARM BY THOSE IN ITS EMPLOY AS WELL. AN INMATES CELL IS VIRTUALLY THE ONLY BLIND SPOT LEFT TO ACCOUNT FOR IN A STATE OF THE ART BUILDING WHERE HI RESOLUTION CAMERAS CAP-TURE LITERALLY EVERY SQUARE INCH OF BUILDING OUTSIDE OF AN INMATES CELL. SO THE FACT THAT A POLICY IS BEING EXECUTED WITH NO TYPE OF RECORDING DEVICE, IN A WELL KNOWN BLIND SPOT, IS PUZZLING & SCREAMS DELIBERATE INDIFFERENCE TO THE FACT THAT JAILERS DO (NO M-ATTER HOW SELDOM, BECAUSE SELDOM IS EXCESSIVELY MUCH MORE PUNISHMENT THAN THE ZERO PUNISHMENT THE US CONSTITUTION SUPPOSEDLY AFFORDS PRE TRIAL DETAINEES) ASSAULT INMAT-ES IN THEIR KEEP.

32. EVEN MORE FURTHER THE WAYNE COUNTY DEFENDANTS & ITS POLICY MAKERS HAVE NO EXCUSE AS TO WHY THIS POLICY ISNT COUPLED WITH A REQUIREMENT THAT A RECORDING DEVICE BE USED IN INTERACTIONS WITH INMATES THAT WILL RESULT IN OFFICERS ENTERING A KNOWN BLIND-SPOT WITH AN INMATE ESPECIALLY WHEN DOING SO WOULD LITERALLY COST THEM NOTHING IN THEORY TRAINING, PRACTICE OR EXECUTION. PLAINTIFF ISNT SUGGESTING THE WAYNE COUNTY DEFENDANTS EQUIP EVERYONE OF ITS SHERIFFS DEPUTIES WITH BODYCAMERAS (EVEN THOUGH A GOOD MAJORITY OF THE MAJOR COUNTIES IN MICHIGAN [NONE OF WHOM WERE ESSENTIALLY GIVEN A NEW STATE OF THE ART [redacted] FACILITY TO CONDUCT THEIR BUSINESS] HAVE MODIFI-ED THEIR BUDGETS TO PRIORITIZE THIS SAFETY FEATURE) BECAUSE THAT WOULD BE TOO MUCH LIKE RIGHT & DEFENDANTS WOULD COMPLAIN OF NOT POSSESSING THE FUNDS. PLAINTIFF ISNT EVEN SUGGESTING THE MUCH MORE ECONOMICAL OPTION OF PURCHASING CAMCORDERS & PLACING THEM IN EVERY UNIT IN THE JAIL FOR THE EXPRESS PURPOSES OF ELIMINATING UNRECORDED BLINDSPOT INTERACTIONS WITH THE INMATE POPULATION.

33. PLAINTIFFS SUGGESTION & SOLUTION FOR THIS OBVIOUS PROBLEM & RISK TO INMATE SAFETY IS SO EASY A WAYNE COUNTY SHERIFFS DEPUTY CAN DO IT & SO SIMPLE THE WAYNE COUNTY DEFEN-DANTS SHOULD FIRE ITS POLICY MAKERS FOR LACKING THE REQUISITE FORESIGHT TO ELI-MINATE THIS PROBLEM BEFORE IT EVENTUALLY BECAME A LIABILITY. WAYNE COUNTY SHERIFFS DEPUTIES ARE ON THIER PHONES ALLDAY (CHECK CAMERAS) MAINLY ON TIKTOK. PLAINTIFF HAS LITERALLY WITNESSED WAYNE COUNTY SHERIFFS DEPUTIES MAKE ROUNDS WITH THEIR FACES BURIED IN THEIR PHONE SCREENS TOO MANY TIMES TO COUNT. WAYNE COUNTY DEFENDA-NTS &/OR ITS POLICY MAKERS ALLOW ITS SHERIFF DEPUTIES TO BRING THIER PHONES TO WORK. SO WHATS STOPPING THE WAYNE COUNTY DEFENDANTS &/OR ITS POLICY MAKERS FROM ISSUING & MANDATING A DIRECTIVE IN CONJUNCTION WITH THE POLICY IN QUESTION SIMPLY STATING "ALSO MAKE SURE THE OFFICER STANDING OUTSIDE OF THE CELL HAS HIS PHONE OUT TO RECORD THE INTERACTION BEFORE ENTERING THE CELL TO MAKE SURE THE INMATES OR THE OFFICERS SAFETY & RIGHTS CAN BE RECORDED AS BEING UNQUESTIONABLE PROTECTED & PRESERVED.

PRAYER 4 RELIEF

34. PLAINTIFF SEEKS COMPENSATORY DAMAGES OF $1,500,000.00 FOR DEFENDANTS LIABILITY IN THE AFOREMENTIONED ASSAULTS & ANY & ALL INJURIES [illegible] & SUFFERING PAST FUTURE & PRESENT THAT CAN BE REASONABLE ATTRIBUTED TO DEFENDANT.

COUNT 7

MONELL CLAIM (OFFICIAL POLICY)

35. BASED ON NOVEMBER 21ST 2024 ASSAULTS, [redacted] ARGUMENT & RELIEF SOUGHT SAME AS COUNT 6. SEE PAGE 19 PARAGRAPHS 30-34.

COUNT 8

MONELL CLAIM (OFFICIAL POLICY)

36. BASED ON DECEMBER 18TH 2024 ASSAULTS. ARGUMENT & RELIEF SOUGHT SAME AS COUNT 6. SEE PAGE 19 PARAGRAPHS 30-34.

## COUNT 9

## SPECIAL RELATIONSHIP LIABILITY EXCEPTION

37. UNDER THE DESHANEY CUSTODY EXCEPTION, ALSO CALLED THE 'SPECIAL RELATIONSHIP EXCEPTION' "A STATE" HAS A DUTY TO PROTECT AN INDIVIDUAL WHEN IT HAS 'SO RESTRAIN[ED] AN INDIVIDUAL'S LIBERTY THAT IT RENDERS HIM UNABLE TO CARE FOR HIMSELF, & AT THE SAME TIME FAILS TO PROVIDE FOR HIS BASIC HUMAN NEEDS - E.G. FOOD, CLOTHING, SHELTER, MEDICAL CARE, & REASONABLE SAFETY." (22) IN OTHER WORDS, THE DUTY TO PROVIDE AN INDIVIDUAL WITH BASIC NEEDS ARISES WHEN THAT INDIVIDUAL IS PLACED IN CUSTODY (23)

38. PLAINTIFF WAS ASSAULTED 3 TIMES WHILE ALREADY RESTRAINED & INSIDE OF HIS CELL & POSING NO REASONABLE THREAT TO DEFENDANTS AS HE WAS ALREADY RESTRAINED &/OR SUBDUED AS WELL AS OUT NUMBERED BY DEFENDANTS & NOT RESISTING OR BEHAVING IN A THREATENING MANNER AT NONE OF THE TIMES RELEVANT TO THE ASSAULTS. PLAINTIFF WAS ALSO DENIED MEDICAL ATTENTION FOR HOURS (NOV. 20 ASSAULT) & DAYS (DEC. 18 ASSAULT) FOR BOTH ASSAULTS WHICH RESULTED IN OBVIOUS INJURIES. PLAINTIFF WAS NEVER INTERVIEW BY INTERNAL AFFAIRS & BELIEVES NO INVESTIGATION WAS DONE DUE TO MULTIPLE DEFENDANTS CONSPIRING TO COVER UP PLAINTIFFS ALLEGATIONS OF ASSAULT TO PROTECT THEIR CO-WORKERS. PLAINTIFF WAS ASSAULTED FOR REPORTING THE ASSAULT MULTIPLE TIMES, WRITTEN A FALSE ASSAULT ON STAFF MISCONDUCT & STILL PUNISHED & PLACED IN SEGREGATION ON MAX, FOR AN UNDETERMINED AMOUNT OF TIME, WHERE HIS PRIVELEGES WERE RESTRICTED FROM THOSE AFFORED REGULAR GENERAL POPULATION INMATES (LESS YARD, LESS PHONE TIME, NO VISITS, NO HUMAN INTERACTION) EVEN AFTER BEING ADJUDICATED NOT GUILTY OF THE ASSAULT BY A "NON BIASED" PARTY PROVIDED BY DEFENDANTS.

39. THE AFOREMENTIONED EVENTS HAPPENED ON DEFENDANTS WATCH & RAN AFOUL OF THE DEFENDANTS SPECIAL RELATIONSHIP DUTY TO PROTECT VIOLATING PLAINTIFFS SUBSTANTIVE & PROCEDURAL DUE PROCESS RIGHTS.

## PRAYER 4 RELIEF

40. PLAINTIFF SEEKS COMPENSATORY DAMAGES OF $2,000,000.00 FOR DEFENDANTS LIABILITY IN THE AFOREMENTIONED CONSTITUTIONAL VIOLATIONS & ANY & ALL INJURIES, PAIN & SUFFERING PAST, FUTURE, & PRESENT THAT CAN REASONABLY ATTRIBUTED TO DEFENDANT.

## COUNT 10

## MONELL CLAIM (OFFICIAL POLICY)

41. DEFENDANTS HAVE A POLICY IN PLACE THAT ALLOWS A DEPUTY, EVEN AFTER AN INMATE REPORTS AN ASSAULT WHICH RESULTS IN A SERIOUS & VISABLE INJURY, TO RETURN TO WORK THE NEXT DAY AS WELL AS STILL BE IN PROLONGED DAILY CONTACT WITH THE ASSAULT VICTIM. IRRESPECTIVE OF AN INVESTIGATION INTO THE DEPUTIES CONDUCT. THIS POLICY WAS THE MOVING FORCE BEHIND DEFENDANT HOLMAN BEING ABLE TO RALLY A TEAM OF ONE OF HIS EQUALS & SEVERAL OF HIS SUBORDINATES TO CARRY OUT THE NOV 21 2024 ASSAULT & BATTERY ON PLAINTIFF AS WELL AS PERSONALLY PARTICIPATE IN THE DEC. 18 2024 ASSAULT ON PLAINTIFF.

## PRAYER 4 RELIEF

42. PLAINTIFF SEEKS COMPENSATORY DAMAGES OF $1,000,000.00 FOR DEFENDANTS LIABILITY IN THE AFOREMENTIONED CONSTITUTIONAL CONSTITUTIONAL VIOLATIONS & ANY & ALL INJURIES PAIN & SUFFERING PAST, FUTURE & PRESENT THAT CAN REASONABLY BE ATTRIBUTED TO DEFENDANT.

## COUNT 11

## SPECIAL RELATIONSHIP EXCEPTION

43. FROM NOVEMBER 12TH - NOVEMBER 26TH PLAINTIFF WAS DENIED ANY HUMAN CONTACT, AN HOUR OUT OF HIS CELL FOR EXCERCISE &/OR A SHOWER, ACCESS TO LAW LIBRARY, GRIEVANCE PROCESS & COMMISSARY, A BED & TISSUE. FROM NOVEMBER 20, 2024 PLAINTIFF HAS REPEATEDLY & CONSISTANTLY KITED MENTAL HEALTH DETAILING HIS INABILITY TO SLEEP DUE TO CONSTANT NIGHTMARES & FLASHBACKS STEMMING FROM THE ASSAULTS. PLAINTIFF TALKED TO NUMEROUS SOCIAL WORKERS ABOUT HIS PARINOIA, ANXIETY, DEPRESSION & HOMOCIDAL IDEATIONS & NO TYPE OF EVALUATION WAS DONE ON PLAINTIFF, NO TREATMENT PLAN WAS PRESCRIBE, NO DOCTOR VISIT SCHEDULED. PLAINTIFF HAS BEEN GIVEN ABSOLUTELY NO MENTAL HEALTH TREATMENT FOR ANY OF THE AFOREMENTIONED SYMPTOMS HE'S COMPLAINED OF STEMMING FROM THE ASSAULTS.

V.

WAYNE COUNTY

41. PLAINTIFF HAS REPEATEDLY EXPRESSED TO MENTAL HEALTH THAT HIS CURRENT MEDICATIONS AREN'T WORKING & THAT HE HAS STOPPED TAKING THEM ALTOGETHER. ALL THESE THINGS RAN AFOUL OF DEFENDANT'S SPECIAL RELATIONSHIP DUTY TO PROTECT & PROVIDE VIOLATING PLAINTIFF'S SUBSTANTIVE & PROCEDURAL DUE PROCESS RIGHTS.

## PRAYER 4 RELIEF

45. PLAINTIFF SEEKS COMPENSATORY DAMAGES OF $750,000.00 FOR DEFENDANTS LIABILITY IN THE AFOREMENTIONED CONSTITUTIONAL VIOLATIONS & ANY & ALL INJURIES PAIN & SUFFERING PAST, FUTURE & PRESENT THAT CAN REASONABLE BE ATTRIBUTED TO DEFENDANT.

[redacted]

## RAPHEAL WASHINGTON (INDIVIDUAL & OFFICIAL CAPACITY)

## COUNT 12

## FAILURE TO TRAIN & DISCIPLE; FAILURE TO INVESTIGATE

46. PLAINTIFF WAS ASSAULTED 3 TIMES WHILE IN HIS CELL & IN HANDCUFFS WHILE IN CUSTODY & COMPLETE CONTROL OF THE SHERIFFS OFFICERS. THE SAME OFFICER PARTICIPATED IN ALL 3 ASSAULTS AS WELL AS ALL OF THE ASSAULTS IN PLAINTIFF'S DECLARATIONS. PLAINTIFF WAS SERIOUSLY INJURED IN BOTH ASSAULTS DEFENDANT HOLMAN PERSONALLY PARTICIPATED IN. ALL THE ASSAULTS IN PLAINTIFFS DECLARATIONS OCCURED & WERE REPORTED BEFORE PLAINTIFF WAS EVER ASSAULTED BY DEFENDANT HOLMAN.

47. THE SHERIFF WAS PUT ON NOTICE OF THE DEFICIENCIES IN HIS TRAINING OF OFFICER HOLMAN AS EARLIER AS OCTOBER 29TH 2024 HOWEVER DEFENDANT WASHINGTON FAILED TO PROVIDE ANY ADDITIONAL TRAINING FOR DEFENDANT HOLMAN DESPITE DEFENDANT HOLMAN BEING IMPLICATED IN 2 DIFFERENT ASSAULTS BY 2 DIFFERENT INMATES IN OCTOBER OF 2024. AS A RESULT OF THIS FAILURE TO TRAIN DEFENDANT HOLMAN WAS IMPLICATED IN AT LEAST 3 ASSAULTS THAT WERE REPORTED IN EARLY NOVEMBER 2024. DEFENDANT HOLMAN STILL WAS GIVEN NO ADDITIONAL TRAINING & AS A RESULT PLAINTIFF WAS ASSAULTED TWICE AT THE HANDS OF DEFENDANT HOLMAN & ONCE UNDER HIS DIRECT GUIDANCE BY A SUBORDINATE.

48. COUPLED WITH THE FACT THAT DEFENDANT HOLMAN WAS ALLOWED TO COME TO WORK THE NEXT DAY AFTER EACH ASSAULT WAS REPORTED & WASN'T GIVEN ANY TYPE OF DISCIPLINE ON TOP OF REMAINING IN A SUPERVISORY POSITION. IT CAN BE REASONABLY DEDUCED THAT DEFENDANT HOLMANS ACTIONS WERE APPROVED OF BY DEFENDANT WASHINGTON. DESPITE AT LEAST 3 OF THESE ASSAULTS RESULTING IN [redacted] VISIBLE & SERIOUS INJURIES NO INVESTIGATION WAS LAUNCHED TO DETERMINED DEFENDANT HOLMANS LIABILITY & IN PLAINTIFF'S CASE OFFICERS, NURSES & INTERNAL AFFAIRS CONSPIRED TO COVER UP & RETALIATE AGAISNT PLAINTIFF FOR SPEAKING OUT.

49. PLAINTIFF SEEKS $750,000 IN COMPENSATORY DAMAGES & $500,000 IN PUNITIVE DAMAGES FROM DEFENDANT WASHINGTON AS WELL AS $750,000 IN COMPENSATORY DAMAGES IN DEFENDANT WASHINGTON IN HIS OFFICIAL CAPACITY. IN REGARDS TO DEFENDANT WASHINGTONS PERSONAL CAPACITY PLAINTIFF NOTES THAT A NON-STATUTORY CONTRACTUAL INDEMNIFICATION AGREEMENT MAY EXIST BETWEEN DEFENDANT & HIS COUNTY EMPLOYER &/OR INSURER. IF SO PLAINTIFF ASKS THE COURT TO UNCOVER & ENFORCE THIS AGREEMENT ON BEHALF OF THE PLAINTIFF.

## COUNT 13

## RATIFICATION OF ILLEGAL ACTS

50. PARAGRAPH 48 IN COUNT 12 WAS MEANT FOR THIS COUNT; SEE PARAGRAPH 48 IN COUNT 12.

## PRAYER 4 RELIEF

51. PLAINTIFF SEEKS $750,000 IN COMPENSATORY DAMAGES & $500,000 IN PUNITIVE DAMAGES FROM DEFENDANT WASHINGTON IN HIS INDIVIDUAL CAPACITY AS WELL AS $750,000 IN COMPENSATORY DAMAGES IN HIS OFFICIAL CAPACITY. IN REGARDS TO DEFENDANT WASHINGTONS INDIVIDUAL CAPACITY PLAINTIFF NOTES THAT A NON-STATUTORY CONTRACTUAL INDEMNIFICATION AGREEMENT MAY EXIST BETWEEN DEFENDANT & HIS COUNTY EMPLOYER &/OR INSURER. IF SO PLAINTIFF [redacted] ASKS THE COURT TO UNCOVER & ENFORCE THIS AGREEMENT ON BEHALF OF THE PLAINTIFF.

55. DESPITE HAVING ALL OF THIS KNOWLEDGE OF DEFENDANT HOLMANS PROPENSITIES TO ASSAULT INMATES DEFENDANT FADLALLAH FAILED TO SUPERVISE DISCIPLINE &/OR CONTROL DEFENDANT HOLMAN. DEFENDANT FADLALLAH ALSO FAILED TO INVESTIGATE PLAINTIFFS, OR ANY OF THE OTHER DECLARANTS FOR THAT MATTER, ALLEGATIONS LODGED AGAINST DEFENDANT HOLMAN. DEFENDANT [redacted] FADLALLAHS SUPERVISORY FAILURES ULTIMATELY LED TO PLAINTIFF ONCE AGAIN BEING ASSAULTED IN HIS CELL WITH & WITHOUT RETRAINTS; BY DEFENDANTS HOLMAN, LOFTIS & FOUR OTHER DEPUTIES ON DECEMBER 18TH 2024. AN ASSAULT THAT WAS LIKEWISE RATIFIED BY A FAILURE TO SUPERVISE INVESTIGATE CONTROL &/OR DISCIPLINE BY DEFENDANT FADLALLAH.

## PRAYER 4 RELIEF

56. PLAINTIFF SEEKS $325,000 IN COMPENSATORY DAMAGES & $250,000 IN PUNITIVE DAMAGES FROM DEFENDANT FADLALLAH IN HIS INDIVIDUAL CAPACITY; & $325,000 IN COMPENSATORY DAMAGES FROM DEFENDANT FADLALLAH IN HIS OFFICIAL CAPACITY FOR THE DETAILS SET FORTH IN THE AFOREMENTIONED SUPERVISORY LIABILITY CLAIM. PLAINTIFF NOTES THAT A NON-STATUTORY CONTRACTUAL INDEMNIFICATION AGREEMENT MAY EXIST BETWEEN DEFENDANT & HIS EMPLOYER &/OR INSURER. IF SO PLAINTIFF ASKS THE COURT TO UNCOVER & ENFORCE THIS AGREEMENT ON BEHALF OF THE PLAINTIFF.

## LIEUTENANT LYNCH
## COUNT 15

57. ON NOVEMBER 21, 2024 DEFENDANT LYNCH WAS MADE AWARE OF DEFENDANT HOLMANS NOVEMBER 20TH ASSAULT ON PLAINTIFF. NON-PARTY SERGEANT SHEEN PUT DEFENDANT LYNCH (AS WELL AS THE OTHER SUPERVISOR DEFENDANTS) ON NOTICE OF DEFENDANT HOLMANS ASSAULTIVE PROPENSITIES WHEN HE TURNED IN HIS REPORT OF THE ASSAULT WHICH INCLUDED A DETAILED WITNESS STATEMENT OF THE ASSAULT WRITTEN & SIGNED BY PLAINTIFF WITH A PROSECUTION RIGHTS FORM. IN ALL ACTUALITY DEFENDANT LYNCH WAS AWARE OF DEFENDANT HOLMANS "MO" OF ASSAULTING INMATES IN THEIR CELLS AS EARLY AS OCTOBER 29TH 2024 WHERE INMATE HUDSONS NOSE WAS BROKEN BY DEFENDANT HOLMAN BECAUSE THIS INCIDENT WAS DOCUMENTED & GRIEVED. ON NOVEMBER 25 2024 @ 7:00AM PLAINTIFF STOPPED DEFENDANT LYNCH & INFORMED HIM THAT HE'D BEEN ASSAULTED ON THE 20TH OF NOVEMBER BY DEFENDANT HOLMAN WHILE INSIDE HIS CELL IN RESTRAINTS & ON NOVEMBER 21ST BY DEFENDANT HOLMAN UNDER IDENTICAL CIRCUMSTANCES.

58. PLAINTIFF FURTHER STRESSED HIS FEAR THAT ANOTHER ASSAULT WAS IMMINENT & AIRED HIS SUSPICIONS OF THE ASSAULTS BEING COVERED UP. DEFENDANT LYNCH TOLD PLAINTIFF HE WOULD LOOK INTO IT & GET BACK WITH PLAINTIFF. PLAINTIFF NEVER AGAIN HEARD FROM LT. LYNCH. DEFENDANT LYNCH HAD A SPECIAL RELATIONSHIP DUTY TO ENSURE THAT PLAINTIFF WAS SAFE FROM ANY FUTURE HARM FROM HIS SUBORDINANTS. ESPECIALLY CONSIDERING THAT DEFENDANT HOLMAN WAS ALLEDGED TO HAVE ASSAULTED MULTIPLE INMATES IN HIS RECENT PAST. ONE SUCH ASSAULT REPORTED A MERE 9 DAYS BEFORE PLAINTIFF WAS FIRST ASSAULTED BY DEFENDANT HOLMAN. AS A RESULT OF DEFENDANT [redacted] LYNCHS FAILURE TO INVESTIGATE, DISCIPLE, CONTROL & SUPERVISE DEFENDANT HOLMAN WAS ALLOWED TO COME TO WORK EVERYDAY LEADING UP TO DECEMBER 18TH WHERE PLAINTIFF WAS BRUTALLY ASSAULTED BY DEFENDANT HOLMAN & SEVERAL OF HIS SUBORDINATES.

## PRAYER 4 RELIEF

59. PLAINTIFF SEEKS $162,500 IN COMPENSATORY DAMAGES & $125,000 IN PUNITIVE DAMAGES FROM DEFENDANT LYNCH IN HIS INDIVIDUAL CAPACITY; & $162,500 IN COMPENSATORY DAMAGES FROM DEFENDANT LYNCH IN HIS OFFICIAL CAPACITY FOR THE DETAILS SET FORTH IN THE AFOREMENTIONED SUPERVISORY LIABILITY CLAIM. PLAINTIFF NOTES THAT A NON-STATUTORY CONTRACTUAL INDEMNIFICATION AGREEMENT MAY EXIST BETWEEN DEFENDANT LYNCH & HIS EMPLOYER &/OR INSURER (IN REGARDS TO HIS INDIVIDUAL CAPACITY) IF SO PLAINTIFF ASKS THE COURT TO UNCOVER & ENFORCE THIS AGREEMENT ON BEHALF OF PLAINTIFF.

## COUNT 16
## UNKNOW CAPTAIN #1

60. ON NOVEMBER 21, 2024 DEFENDANT UNKNOWN CAPTAIN #1 WAS MADE AWARE OF DEFENDANT HOLMANS NOVEMBER 20TH ASSAULT ON PLAINTIFF. NON-PARTY SERGEANT SHEEN PUT DEFENDANT UNKNOW CAPTAIN #1 (AS WELL AS THE OTHER SUPERVISOR DEFENDANTS) ON NOTICE OF DEFENDANT HOLMANS ASSAULTIVE PROPENSITIES WHEN HE TURNED IN HIS REPORT OF THE ASSAULT WHICH INCLUDED A DETAILED WITNESS STATMENT OF THE ASSAULT WRITTEN & SIGNED BY PLAINTIFF WITH A PROSECUTION RIGHTS FORM. IN ALL ACTUALITY DEFENDANT UNKNOWN CAPTAIN #1 WAS AWARE OF DEFENDANT HOLMANS "MO" OF ASSAULTING INMATES IN THEIR CELLS IN AS EARLY AS OCTOBER 29TH 2024 WHERE NON-PARTY INMATE HUDSONS NOSE WAS BROKEN BY DEFENDANT HOLMAN BECAUSE THIS INCIDENT WAS DOCUMENTED, REPORTED & GRIEVED.

MARTEZ DWIGHT MCKEE (PLAINTIFF)
V.
WAYNE COUNTY (DEFENDANT) ET AL.

# SUPERVISOR LIABILITY (COUNTS 14-17)

## COUNT 14
## CAPTAIN FADLALLAH

52. ON NOVEMBER 21ST 2024 DEFENDANT FADLALLAH WAS THRICE MADE AWARE OF DEFENDANT HOLMANS NOVEMBER 20TH ASSAULT ON PLAINTIFF. NON-PARTY SERGEANT SHEEN PUT DEFENDANT FADLALLAH ON NOTICE (AS WELL AS THE OTHER SUPERVISOR DEFENDANTS) OF SERGEANT DEFENDANT HOLMANS ASSAULTIVE PROPENSITIES WHEN HE TURNED IN HIS REPORT OF THE ASSAULT WHICH INCLUDED A DETAILED WITNESS STATEMENT OF THE ASSAULT WRITTEN & SIGNED BY PLAINTIFF WITH A PROSECUTION RIGHTS FORM. ON THAT SAME DAY BETWEEN THE HOURS OF 11AM - 1PM APPROXIMATELY FROM A DISTANCE OF 15-20 FEET PLAINTIFF (WITH A BLACK & BLOODY EYE) YELLED OUT OF HIS OPEN FOOD SLOT THAT HE'D BEEN ASSAULTED BY A WAYNE COUNTY SHERIFFS DEPUTY AMONGST OTHER THINGS & THAT HE FEARED FOR HIS LIFE MULTIPLE TIMES. CAMERA FOOTAGE WILL SHOW THAT DEFENDANT FADLALLAH ACKNOWLEDGED THAT HE'D HEARD PLAINTIFF MULTIPLE TIMES BY LOOKING DIRECTLY INTO PLAINTIFFS FACE AS HE PLED FOR SUCCOR. LASTLY NON-PARTY DEPUTY ECHOLS INFORMED DEFENDANT FADLALLAH OF PLAINTIFFS PLIGHT SHORTLY AFTER PLAINTIFFS PLEAS FOR SUCCOR. DEFENDANT FADLALLAH INSTRUCTED NON-PARTY DEPUTY ECHOLS TO TELL PLAINTIFF HE'D COME TALK TO HIM. HOWEVER PLAINTIFF WAS NEVER TALKED TO BY DEFENDANT FADLALLAH WHO LEFT WITHOUT SAYING 1 WORD TO PLAINTIFF.

53. DEFENDANT FADLALLAH IN ALL ACTUALITY WAS AWARE OF DEFENDANT HOLMANS "MO" OF ASSAULTING INMATES IN THEIR CELLS AS EARLY AS OCTOBER 29TH 2024 WHERE INMATE HUDSONS NOSE WAS BROKEN. BECAUSE THIS ASSAULT WAS DOCUMENTED & GRIEVED. DEFENDANT FADLALLAH HAD A SPECIAL RELATIONSHIP DUTY TO AT BARE MINIMUM FOLLOW UP WITH PLAINTIFF ABOUT HIS ACCUSATIONS LODGE AGAISNT DEFENDANT HOLMAN. ESPECIALLY CONSIDERING THE FACTS THAT NOT ONLY WAS THE OCTOBER 29TH INCIDENT DOCUMENTED GRIEVED & KNOWN TO DEFENDANT FADLALLAH ON 11-3-2024 & 11-11-2024 TWO MORE ALLEGATIONS WERE REPORTED AGAINST DEFENDANT HOLMAN FOR ASSAULTING TWO MORE INMATES IN THEIR CELLS. DESPITE ALL OF THIS INCENTIVE & PROPENSITY EVIDENCE DEFENDANT FADLALLAH FAILED TO UPHOLD HIS SPECIAL RELATIONSHIP DUTY TO PROTECT PLAINTIFF & SUPERVISE DEFENDANT HOLMAN & INSTEAD RATIFIED HIS ILLEGAL ACTS.

54. ONE WEEK-TWO WEEKS (APPROXIMATELY) PRIOR TO THE DECEMBER 18TH 2024 ASSAULT WHEN DEFENDANT FADLALLAH & DEFENDANT DUNLAP MADE ROUNDS IN PLAINTIFFS UNIT. WHEN DEFENDANT FADLALLAH FINALLY WAS ABLE TO MAKE TO PLAINTIFFS CELL DOOR THIS DIALOGUE ENSUED:

PLAINTIFF (HEREAFTER "P"): HEY MAN, WHATS GOING ON WITH THE INVESTIGATION INTO SERGEANT HOLMAN ASSAULTING? BEFORE THE ASSAULTS I NEVER SAW HIM NOW ALL OF A SUDDEN IM SEEING HIM EVERYDAY. I DONT FEEL SAFE AROUND HIM & I FEEL LIKE HES GOING TO ATTACK ME AGAIN THE FIRST CHANCE HE GETS. ITS BEEN WEEKS SINCE THE ASSAULT & INTERNAL AFFAIRS STILL HASNT TALKED TO ME. SMELLS LIKE A COVER UP.

DEFENDANT FADLALLAH (HEREAFTER "DF"): [SMILES AT THE MENTION OF THE WORDS COVER UP) IA SHOULD HAVE CAME & TALKED TO YOU BY NOW. ILL LOOK INTO IT.

P: IVE BEEN HEARING 'IMA LOOK INTO IT' ALOT LATELY. HOW ARE YOU GOING TO LOOK INTO ANYTHING ON MY BEHALF & YOU DONT EVEN KNOW MY NAME?

DF: I DO KNOW YOUR NAME (SNAPS HIS FINGERS TRYING TO [redacted] REMEMBER).. ITS ... ITS (SAYS WRONG NAME AS IF ITS RIGHT)!

P: NOT EVEN CLOSE. ITS MCKEE.

DF: RIGHT MCKEE. ILL LOOK INTO IT. DEFENDANT FADLALLAH WALKED AWAY & PLAINTIFF COULD HEAR DEFENDANT FADLALLAH INFORM DEFENDANT DUNLAP: "THATS INMATE MCKEE WHO CLAIMS HE WAS ASSAULTED BY A SERGEANT. HE WANTS TO SPEAK WITH INTERNAL AFFAIRS." PLAINTIFF COULD HEAR NO MORE OF THE CONVERSATION THAN THIS BECAUSE DEFENDANTS WALKED OUTSIDE OF PLAINTIFFS HEARING.

61. BETWEEN THE DATES OF NOVEMBER 27TH 2024 - DECEMBER 3, 2024 DEFENDANT UNKNOWN CAPTAIN #1 MADE A ROUND IN 2A PLAINTIFF'S THEN HOUSING UNIT. PLAINTIFF STOPPED DEFENDANT AS HE WAS CONDUCTING THIS ROUND & INFORMED HIM THAT HE'D BEEN ASSAULTED IN HIS CELL WHILE IN RESTRAINTS ON NOVEMBER 20TH 2024 (BY DEFENDANT HOLMAN) & ON NOVEMBER 21ST 2024 (BY DEFENDANT HORTON) UNDER IDENTICAL CIRCUMSTANCES. PLAINTIFF FUTHER INFORMED DEFENDANT HE WAS DISSATISFIED WITH WCSO INVESTIGATIVE EFFORTS THUS FAR ESPECIALLY SINCE PLAINTIFF WAS SPORTING A BLACK & BLOODY EYE & SUFFERING FROM NIGHTMARES, PARINOA, HOMOCIDAL IDEATIONS & A LACK OF SLEEP STEMMING FROM BOTH ASSAULTS. DEFENDANT SAID HE'D LOOK INTO IT CHECK THE CAMERAS FOR THE RELEVANT DATES & GET BACK WITH PLAINTIFF. PLAINTIFF NEVER HEARD ANYTHING BACK FROM DEFENDANT UNKNOWN CAPTAIN #1 & DEFENDANT HOLMAN WAS ALOUD TO COME TO WORK THE NEXT DAY & SUBSEQUENT DAYS LEADING UP TO THE DECEMBER 18TH 2024 ASSAULTS.

62. DEFENDANT UNKNOWN CAPTAIN #1 HAD A SPECIAL RELATIONSHIP DUTY TO ENSURE THAT PLAINTIFF WAS SAFE FROM ANY FUTURE HARM FROM HIS SUBORDINATES. ESPECIALLY CONSIDERING THAT DEFENDANT HOLMAN WAS ALLEDGED TO HAVE ASSAULTED MULTIPLE INMATES IN HIS RECENT PAST. ONE SUCH ASSAULTED REPORTED A MERE 9 DAYS BEFORE PLAINTIFF WAS FIRST ASSAULTED BY DEFENDANT HOLMAN. AS A RESULT OF DEFENDANT UNKNOW CAPTAIN #1'S FAILURE TO INVESTIGATE, DISCIPLINE, CONTROL & SUPERVISE DEFENDANT HOLMAN HE WAS ABLE TO ASSAULT PLAINTIFF ON 2 SEPERATE OCCASIONS & ORCHESTRATE A THIRD ASSAULT ON PLAINTIFF CARRIED OUT BY ONE OF HIS SUBORDINATES. SEE PAGE 23 PARAGRAPH 56 FOR RELIEF SOUGHT FOR THIS CLAIM.

## COUNT 17
## CAPTAIN LYNCH

63. INSERT PARAGRAPH 60 OF COUNT 16. BETWEEN THE DATES OF NOVEMBER 28TH 2024 - NOVEMBER 30TH 2024 DEFENDANT LYNCH MADE A ROUND IN PLAINTIFF'S UNIT. PLAINTIFF STOPPED DEFENDANT LYNCH & INFORMED HIM THAT HE HAD BEEN ASSAULTED ON NOVEMBER 20TH 2024 INSIDE OF HIS CELL WHILE IN RESTRAINTS (BY DEFENDANT HOLMAN) & ON NOVEMBER 21ST UNDER SIMILAR CIRCUMSTANCES (BY DEFENDANT HORTON). PLAINTIFF FELT AS IF BOTH INCIDENTS WERE BEING SWEPT UNDER THE RUG & THAT INTERNAL AFFAIRS STILL HADNT CAME TO TALK TO PLAINTIFF A WEEK AFTER THE INCIDENT. PLAINTIFF FURTHER STRESSED THAT HE FEARED FOR HIS SAFETY BECAUSE DEFENDANT HOLMAN, WHOM PLAINTIFF HAD SPARSELY EVER SEEN PRIOR TO THE ASSAULTS, WAS POPPING UP EVERYDAY NOW & PLAINTIFF FELT ANOTHER ATTACK WAS IMMINENT. DEFENDANT LYNCH TOLD PLAINTIFF HE'D LOOK INTO IT & LEFT.

64. PLAINTIFF CANNOT REMEMBER IF DEFENDANT LYNCH CAME BACK THAT AFTERNOON OR A DAY OR 2 LATER HOWEVER PLAINTIFF ADMITS DEFENDANT LYNCH DID LOOK INTO IT. PLAINTIFF WAS PULLED OUT OF HIS CELL INTO THE COMMON AREA TO TALKED TO DEFENDANT LYNCH. PLAINTIFF NOTES THAT DEFENDANT HOLMAN ENTERED THE UNIT & LINGERED & EAVESDROPPED ONCE HE SAW PLAINTIFF TALKING TO DEFENDANT LYNCH. PLAINTIFF & DEFENDANT LYNCH TALKED FOR APPROXIMATELY 15-20 MINUTES. AS SOON AS PLAINTIFF & DEFENDANT LYNCH STOPPED TALKING DEFENDANT HOLMAN LEFT WITH DEFENDANT LYNCH & THE 2 COULD BE SEEN TALKING RIGHT OUTSIDE OF THE UNITS DOOR. HOWEVER PLAINTIFF & DEFENDANTS CONVERSATION WENT AS FOLLOWS.

65. DEFENDANT LYNCH (HEREAFTER "DL"): [HOLDING UP PAPERS] YOU GOT ME LOOKING AROUND SAYING NOBODY REPORTED THIS INCIDENT & THERES A WHOLE INCIDENT REPORT RIGHT HERE.

PLAINTIFF (HEREAFTER "P"): THERE YOU GO PUTTING WORDS INTO MY MOUTH ONCE AGAIN. I TOLD YOU THE SECOND ASSAULT WASNT REPORTED, & THAT I FELT LIKE THE 1ST ASSAULT WASNT BEING PROPERLY INVESTIGATED BECAUSE HERE WE ARE A WEEK LATER & INTERNAL AFFAIRS STILL HASNT TALKED TO ME ABOUT THE ASSAULTS.

DL: YEAH THAT IS STRANGE. ILL HAVE THEM COME TALK TO YOU. NOW EXPLAIN TO ME THIS SITUATION THAT HAPPENED.

P: (LOOKS BACK AT DEFENDANT HOLMAN APPREHENSIVELY) MAN.

DL: (LAUGHS) HE'S NOT GOING TO DO NOTHING TO YOU (PLAINTIFF EXPLAINS BOTH ASSAULTS IN DETAIL TO DEFENDANT LYNCH.) OK SO WHAT ARE YOU LOOKING FOR TO BE DONE ABOUT THIS?

P: I WANT HOLMAN FIRED.

DL: (CHUCKLES) THATS NOT GOING TO HAPPEN.

P: WOW. SO THIS GUY HAS A HISTORY OF ASSAULTS & IM TELLING YOU WITH A BLACK EYE AS PROOF, THAT I'VE BEEN ASSAULTED BY HIM & HE JUST GETS TO COME TO WORK EVERYDAY?

DL: (CHUCKLES AGAIN) THIS IS PRISON THINGS HAPPEN.

P: THIS IS NOT PRISON & THINGS SHOULDNT 'JUST HAPPEN' TO DEFENSLESS INMATES.

DL: SEE THATS WHY YOU HAVE A BLACK EYE NOW. YOU TALK TOO MUCH.

P: WOW. PLAINTIFF CHECKED OUT OF THE CONVERSATION AFTER THIS COMMENT. INSERT PARAGRAPH 62 OF COUNT 16. & SEE PAGE 23 PARAGRAPH 56 FOR RELIEF SOUGHT FOR THIS CLAIM.

COUNT 18
OFFICIAL WITH FINAL DECISION MAKING AUTHORITY RATIFIED ILLEGAL ACTIONS
CHIEF OF JAILS ROBERT DUNLAP

66. ONE WEEK-TWO WEEKS BEFORE DECEMBER 18TH 2024 ASSAULT(DISCOVERY WILL PROVIDE EXACT DA-
TE & TIME) DEFENDANT DUNLAP MADE A ROUND [redacted] PLAINTIFFS HOUSING UNIT AT THE TIME.
AS DEFENDANT DUNLAP MADE [redacted] LED OUT HIS CELL TO DEFENDANT DUNL-
AP: "I NEED TO TALK TO YOU ABOU[redacted]E BY YOUR STAFF MEMBERS." DEFENDA-
NT DUNLAP REPLIED: "OK. GIVE ME A MINUTE TO MA[redacted]Y BACK AROUND TO TALK TO YOU." DEFE
NDANT FADLALLAH CAME TO PLA[redacted] DIALOGUE IN PARAGRAPH 84 ENSUED. PLAIN
TIFF NOTES DENFENDANT DUN[redacted]BACK TOWARDS PLAINTIFFS CELL WAS
INTERCEPTED BY DEFENDANT FADLALLAH WHO INFORMED HIM: "INMATE MCKEE WANTS TO
TALK TO INTERNAL AFFAIRS ABOUT BEING ASSAULTED BY A SEARGEANT." PLAINTIFF COULD
CLEARLY HEAR DEFENDANT FADLALLAH RELAY THIS INFORMATION TO DEFENDANT DUNLAP. HOW
EVER DEFENDANT DUNLAP, WHO WAS CLEARY COMING BACK TOWARDS PLAINTIFFS END OF THE
HALL(PRE-INFORMATION), AS HE'D PROMISED EARLIER, SUSPICIOUSLY CHANGED TRAJECTORY &
EXITED THE SUBDAY ROOM.

67. PLAINTIFF NOTES 3 THINGS. 1.) BY THIS TIME PLAINTIFF [redacted] HAD WRITTEN & SUBMITTED 24
GRIEVANCES DETAILING BOTH ASSAULTS & THE INCIDENTS SURROUDING THEM. 2.) DEFENDA-
NT DUNLAP STOPPED & TALKED TO EVERYONE WHO ASKED HIM A QUESTION(LITERALLY) EXCEPT
FOR PLAINTIFF. 3.) PLAINTIFF BANGED ON HIS WINDOW MULTIPLE TIMES & GOT DEFENDANT DUNLAP
S ATTENTION & EACH TIME DEFENDANT DUNLAP ASSURED PLAINTIFF HE'D COME TALK TO PLAINTIFF
EVEN GOING OUT THE DOOR PLAINTIFF WAS TOLD BY DEFENDANT DUNLAP ASSURED PLAINTIFF
THAT HE'D BE BACK TO TALK TO PLAINTIFF. DEFENDANT DUNLAP NEVER CAME BACK TO TALK TO
PLAINTIFF. DEFENDANT DUNLAP HAD A SPECIAL RELATIONSHIP DUTY AS WELL AS A DUTY AS A
FINAL DECISION MAKER WITH IN WCSO TO AT MINIMUM INVESTIGATE PLAINTIFFS ALLEGAT
IONS WHICH HE WAS MADE AWARE OF BY ONE OF HIS HIGHEST RANKING SUBORDINATES. AN
INVESTIGATION BY DEFENDANT DUNLAP WOULD HAVE UNCOVERED ALL THE ASSAULT ALLEG-
ATIONS(WHICH PLAINTIFF HAS NO DOUBT THE CHIEF OF JAILS WAS PRIVY TO) MADE AGAINST [redacted]
[redacted] DEFENDANT HOLMAN WHICH SHOULD HAVE FORCED DEFENDANT TO INTERVENE & PREVE
NTED THE DECEMBER 18TH 2024 BEATING. DEFENDANT DUNLAP DELIBERATELY & RECKLESS
LY CHOSE TO DO NOTHING WITH THE INFORMATION RELAYED TO HIM TWICE. THUS RATIFY-
ING THE ILLEGAL ACTIONS OF HIS SUBORDINATES.

68. INSERT PARAGRAPH 51 OF COUNT 13 ON PAGE 21 FOR RELIEF SOUGHT.

RIGHTS VIOLATED(ALL SUBSEQUENT PARAGRAPH REFRENCES WILL BE FOUND IN STATEMENT
OF FACTS. EXCEPT FOR 69(PAGE 25) & 82(PAGE 26))
CLAIM 1: FIRST AMENDMENT VIOLATIONS
RETALIATION
69. DEFENDANT ALLEN: SEE: PARAGRAPH 1; PARAGRAPH 2 SENTENCE 5; PARAGRAPH 3; SENTENCES 1&2; PARAGRA-
PH 4; PARAGRAPHS 8-9. AFOREMENTIONED CONDUCT WAS IN RESPONSE TO PLAINTIFF WRITING NOV. 17TH
MENTAL HEALTH COMPLAINT AGAISNT DEFENDANT AS WELL AS THE FOLLOWING GRIEVANCES: SEP. 11
#48510781; SEP 11 #48512301; NOV. 17 #50200481; NOV 13 #50400301; NOV 14 #50439634; NOV 14 #50439231
PLAINTIFF SEEKS $50,000 IN COMPENSATORY DAMAGES & $200,000 IN PUNITIVE DAMAGES AGAISNT DEFEN-
DANTS INDIVIDUAL CAPACITY. A NON STATUATORY CONTRACTUAL INDEMNIFICATION AGREEMENT MAY
EXIST BETWEEN DEFENDANT & HIS EMPLOYER &/OR INSURER. IF SO PLAINTIFF ASKS THIS COURT TO UN-
COVER & ENFORCE SAID AGREEMENT ON BEHALF OF PLAINTIFF. & PARAGRAPH 34. COUNT 19

70. DEFENDANTS DEBONO, BENDERS, DYERS, HOLMAN, LOFTIS, ACERO, HORTON, UNKNOWN DEPUTIES #1 & #2, UNKNOWN
CORPORAL #1, SHELBY CARLSON. SEE: PARAGRAPHS 27, 28, 29, 30, 31, 32, 33, 35, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46,
48, 49 & 50. AFOREMENTIONED CONDUCT WAS IN RESPONSE TO PLAINTIFF REPORTING STAFF ASSAULT
ON NOVEMBER 20TH 2024. DEFENDANT ALLEN IS A PARTY TO THIS RETALIATION CLAIM AS WELL. PLA-
INTIFF SEEKS FROM EACH INDIVIDUAL INSERT SENTENCES 3, 4, & 5 OF PARAGRAPH 69 FOR REL-
IEF SOUGHT. COUNT 20

71. DEFENDANTS LOFTIS, HOLMAN & THOMAS; SEE: PARAGRAPHS 52, 53, 54, 55, 56, 57 & 60. AFORMENT-
IONED CONDUCT WAS IN RESPONSE TO PLAINTIFF REPORTING STAFF ASSAULTS INVOLVING DEFENDA-
NTS LOFTIS & HOLMAN & WRITING GRIEVANCES: NOV 24 #50734934; NOV 24 #50735861; NOV 24 #50731705; NOV 24 #5073
37307; NOV 24 50736394; NOV 24 50736263; NOV 24 #50735[illegible]98; NOV 24 #507[illegible]; ETC GRIEVA-
[illegible]; NOV 24 #50737629; NOV 27 50830674; NOV 25 #50760235; [illegible] 25 #507[illegible] FROM STAFF ASSAULTS
NCES WERE DETAILED ACCOUNTS OF STAFF ASSAULTS & FAILURE TO PROTECT FROM STAFF ASSAULTS
ALL IMPLICATING DEFENDANTS HOLMAN & LOFTIS. PLAINTIFF SEEKS FROM EACH INDIVIDUAL DEFEN-
DANT: INSERT SENTENCES 3, 4, & 5 OF PARAGRAPH 69 FOR RELIEF SOUGHT. COUNT 21

72. DEFENDANTS DENNIS & CAPTAIN LYNCH. SEE PARAGRAPHS 60 [redacted] AFOREMENTIONED CONDUCT WAS IN RE-
SPONSE TO PLAINTIFF BEING FOUND NOT GUILTY OF FICTICIOUS STAFF ASSAULT. PLAINTIFF SEEKS
$150,000 IN COMPENSATORY DAMAGES & $300,000 IN PUNITIVE DAMAGES [redacted] FROM DEFENDANTS INDI-
VIDUALLY. INSERT SENTENCES 4 & 5 OF PARAGRAPH 69. COUNT 22

FREE EXERCISE OF RELIGIOUS BELIEF
73. DEFENDANT AL-WOSARI: SEE PARAGRAPHS #10 & 11. AT ALL TIMES RELEVANT PLAINTIFF A PRACTI-
CING MUSLIM WAS RECIEVING A [redacted] KOSHER DIET. COUNT 23

CLAIM 2: FOURTEENTH AMENDMENT VIOLATIONS
EXCESSIVE FORCE & CRUEL & UNUSUAL PUNISHMENT
74. DEFENDANTS ALLEN, HULL, AL-WOSARI, COX, LOFTIS & HOLMAN: SEE: PARAGRAPH 9 SENTENCES #4-#5 W
; PARAGRAPH 11 SENTENCES #3-#5; PARAGRAPH 12; PARAGRAPH 13 SENTENCES #5 & #6; & PARAGRAPH
16 SENTENCES #4-#6. HAND CUFFING CLAIM. PARAGRAPHS REFERENCED SATISFY 3 PART TEST ESTABLISH-
ED IN MORRISON V. BD. OF TRS. OF GREEN TWP. 583 F.3D 394, 401(6TH CIR. 2009)(24). PLAINTIFF SEEKS
$10,000 IN COMPENSATORY DAMAGES FROM EACH INDIVIDUAL DEFENDANT(S) & $40,000 IN PUNITIVE DAMAGE-
S. INSERT SENTENCES #4-#5 OF PARAGRAPH 69. COUNT 24

75. DEFENDANTS HOLMAN; SEE PARAGRAPH 14 SENTENCES #2-#9; PARAGRAPH 15 SENTENCE #2; PARAGRAPH 16 SENTENCE 5; PARAGRAPH 17 SENTENCES #7-#10; PARAGRAPH 25 SENTENCE #2; PARAGRAPH 56; PARAGRAPH 57. PLAINTIFF SEEKS $1,000,000 IN COMPENSATORY DAMAGES & $1,500,000 IN PUNITIVE DAMAGES FROM DEFENDANT. INSERT SENTENCES #4 & #5 FROM PARAGRAPH 69. COUNT 25

76. DEFENDANTS WAYNE COUNTY & SHERIFF RAPHEAL WASHINGTON. DEFENDANTS HAVE A CUSTOM OF FAILING TO PREVENT CIVIL RIGHTS ABUSES & FAILED TO TERMINATE, DISCIPLINE, OR RELEASE DEFENDANT HOLMAN WHO HAS A HISTORY OF VIOLATING THE RIGHTS OF PRETRIAL DETAINEES INCLUDING THE USE OF EXCESSIVE FORCE & ASSAULT & BATTERY. PLAINTIFF SEEKS $1,000,000 IN COMPENSATORY DAMAGES FROM WAYNE COUNTY DEFENDANT FOR BEING THE UNIT OF LOCAL GOVERNMENT THAT FINANCES THE SHERIFF DEPARTMENT & BECAUSE THE SHERIFF MAKES POLICE POLICY FOR THE COUNTY. PLAINTIFF SEEKS $1,000,000 IN COMPENSATORY DAMAGES & $2,000,000 IN PUNITIVE DAMAGES IN HIS INDIVIDUAL CAPACITY. INSERT SENTENCES #4 & #5 FROM PARAGRAPH 69. COUNT 26

77. DEFENDANTS ALLEN & HORTON; SEE PARAGRAPH 43 SENTENCES #8-#9; PARAGRAPH 44 & PARAGRAPH 45 SENTENCES #2, #4 #5 & #6. PLAINTIFF SEEKS $500,000 IN COMPENSATORY DAMAGES & $850,000 IN PUNITIVE DAMAGES FROM EACH DEFENDANT SEPERATELY. INSERT SENTENCES #4 & #5 FROM PARAGRAPH 69.

78. DEFENDANTS LOFTIS & UNKNOWN DEPUTIES #3 4, 5, & 6. SEE PARAGRAPH 56; & PARAGRAPH 57. PLAINTIFF SEEKS $650,000 IN COMPENSATORY DAMAGES & $1,250,000 IN PUNITIVE DAMAGES FROM EACH INDIVIDUAL DEFENDANT SEPERATELY. INSERT SENTENCES #4 & #5 FROM PARAGRAPH 69. COUNT 28

79. DEFENDANT DYERS; SEE PARAGRAPH 31 SENTENCES #2-#8. PLAINTIFF SEEKS $500 IN COMPENSATORY DAMAGES & $1,500 IN PUNITIVE DAMAGES IN HER INDIVIDUAL CAPACITY. INSERT SENTENCES #4 & #5 FROM PARAGRAPH 69. COUNT 29. PARAGRAPH 77 = COUNT 27

## DELIBERATE INDIFFERENCE

## DENIAL OF MENTAL HEALTH CARE; FAILURE TO IMPLEMENT TREATMENT PLAN COUNT 30

80. PLAINTIFF HAS BEEN ASSAULTED A TOTAL OF 3 TIMES IN THE CUSTODY OF WCSO. AS A RESULT PLAINTIFF HAS BEEN EXPERIENCING NIGHTMARES(WHICH RENDERS PLAINTIFF EFFECTIVELY UNABLE TO SLEEP), FLASHBACKS(WHICH RESULTS IN PLAINTIFF PUNCHING AT NOTHING CONVINCED THAT HE'S PROTECTING HIMSELF FROM ASSAULTS THAT'VE ALREADY HAPPENED), PARINOIA(WHICH PREVENTS PLAINTIFF FROM EATING BECAUSE HE'S CONVINCED JAILERS ARE TRYING TO KILL HIM BY ANY MEANS NECESSARY), HEIGHTENED DEPRESSION(PLAINTIFF HAS BEEN ASSAULTED ON 3 OCCASIONS; PLAINTIFF THOUGHT HE WAS GOING TO DIE & ACTUALLY THOUGHT HE HAD DIED DURING THE DECEMBER 18TH 2024 ASSAULT) STEMMING FROM THE FACT THAT WHEN PLAINTIFF WAS 15 YEARS OLD PLAINTIFF SMACKED A CAMERA OUT OF A TEACHERS HAND FOR TAKING PICTURES OF HIS LITTLE SISTER. THIS WAS PLAINTIFFS FIRST ENCOUNTER WITH THE JUSTICE SYSTEM. ALTHOUGH WAS THE TEACHER WAS NOT INJURED PLAINTIFF WAS SENTENCED & TAKEN AWAY FROM HIS FAMILY. DEFENDANTS WHO ASSAULTED PLAINTIFF HAVE BEEN GIVEN A LICENSE TO BE LAW ABIDDING CRIMINALS.

81. ON JANUARY 2ND 2025 DEFENDANT HOLMAN WAS SOME HOW ABLE TO SNEAK A LOADED PISTOL WITH AMMUNITION UP TO THE 4TH FLOOR. THIS STUNT EXACERBATED PLAINTIFFS PARINOIA. MENTAL HEALTH WAS MADE AWARE OF PLAINTIFFS SYMPTOMS AS WELL AS THIS EXACERBATING FACTOR. FROM NOVEMBER 20TH-DECEMBER 31ST 2024 PLAINTIFF HAD WRITTEN AT LEAST 100 MENTAL HEALTH KITES BEGGING FOR MENTAL HEALTH [redacted] TO EVALUATE HIM FOR PTSD & UPDATE HIS TREATMENT PLAN TO REFLECT HIS CURRENT AILMENTS. PLAINTIFF CONSISTENTLY INFORMED THE SOCIAL WORKERS & THE ONE NURSE PRACTIONER HE WAS PERMITTED TO SEE, DURING THE RELEVANT TIME FRAMES, THAT HIS MEDICATION HAD CEASED TO WORK & HE WISHED TO BE TAKEN OFF & PRESCRIBED MEDICATION THAT WAS CONGRUENT WITH HIS CURRENT AILMENTS. MENTAL HEALTH REFUSED TO CHANGE PLAINTIFFS MEDICATION OR DISCONTINUE THEM. PLAINTIFF WAS FORCED TO STOP TAKING HIS MEDS COLD TURKEY. AS A RESULT PLAINTIFF HAS BEEN SUFFERING WITHDRAWL SYMPTOMS. EVEN IF PLAINTIFF WASNT PARINOID ABOUT HIS FOOD HE STILL WOULDNT BE ABLE TO EAT DUE TO EXTREME NAUSEA.

82. THIS IS NOT A CASE WHERE PLAINTIFF DISAGREES WITH A GIVEN TREATMENT PLAN BECAUSE PLAINTIFF HAS NOT BEEN EVALUATED &/OR GIVEN A TREATMENT PLAN FOR PTSD SYMPTOMS. PLAINTIFF SUES THE MENTAL HEALTH DIRECTOR IN HER OFFICIAL & INDIVIDUAL CAPACITIES. OFFICIAL CAPACITY CLAIMS PREMISED ON THE FACT THAT PLAINTIFF HAS A SPECIAL RELATIONSHIP WITH THE COUNTY, WHICH IMPOSES ON IT A DUTY TO PROVIDE PLAINTIFF WITH ADEQUATE MENTAL HEALTH CARE & IT'S CONTRACT WITH MENTAL HEALTH DIRECTOR DOESNT ABSOLVE IT OF ITS DUTY. PLAINTIFF SEEKS $1,000,000 IN COMPENSATORY DAMAGES FROM MENTAL HEALTH DIRECTOR IN HER OFFICIAL CAPACITY; & 250,000 IN COMPENSATORY DAMAGES & $500,000 IN PUNITIVE DAMAGES. INSERT SENTENCES #4 & #5 OF PARAGRAPH 69.

## DENIAL OF HEALTH CARE COUNT 31

83. DEFENDANTS NURSE LOHING; SEE PARAGRAPH 19; PARAGRAPH 20; PARAGRAPH 25 SENTENCES #2-#4; PARAGRAPH 47; PARAGRAPH 58; PARAGRAPH 61. PLAINTIFF SEEKS $1,000,000 IN COMPENSATORY DAMAGES IN DEFENDANTS OFFICIAL CAPACITY & $200,000 IN COMPENSATORY DAMAGES & $250,000 IN PUNITIVE DAMAGES IN PLAINTIFFS INDIVIDUAL CAPACITY. INSERT SENTENCES #4 & #5 IN PARAGRAPH 69. INSERT SENTENCES #3 & #4 IN PARAGRAPH 82. ALSO PREMISED ON FACT THAT DEFENDANT LOHING AS CHARGE NURSE HAS FINAL DECISION MAKING AUTHORITY & USED IT TO COMMIT MULTIPLE ILLEGAL ACTS.

WAYNE COUNTY(DEFENDANTS)ET AL.

FAILURE TO PROTECT

1.DEFENDANTS:HOLMAN; SEE PARAGRAPH 13 SENTENCES 21&22 & 24-27. PARAGRAPH 33 SENTENCES 4 & 5 PARAG
H 33 SENTENCES 8 & 9. PARAGRA [redacted] PARAGRAPHS 56 & 57. HORTON: PARAGRAPH
ENTENCES 8 & 9 & PARAGRAPH 4 [redacted] 6 7 & 8. PARAGRAPH 7 SENTENCES 14, 15 & 16
PARAGRAPH 9 SENTENCES 7 & 8. P [redacted] PARAGRAPH 40 & 48. ACERO: PARAGRAPHS 40 &
UNKNOWN DEPUTIES 3,4,5 & 6 [redacted] S 50 [redacted] L RELEVANT & CORRESPONDING PARAGRA
DEFENDANTS ALL SHIRKED THEI [redacted] DUTY & FAILED TO PROTECT PLAINTIFF
FROM THEMSELVES. COUNT 32

3.PLAINTIFF SEEKS $50,000 IN CO [redacted] $150,000 IN PUNITIVE DAMAGES FROM DEFENDAN
HOLMAN, LOFTIS & ALLEN. INSE [redacted] NCES [redacted] FROM PARAGRAPH 69. PLAINTIFF SEEKS $15,000
COMPENSATORY DAMAGES & $50,000 IN PUNITIVE DAMAGES FROM REMAINING DEFENDANTS. INSE
SENTENCES #4 & #5 FROM PARAGRAPH 69. SEPERATELY & INDIVIDUAL CAPACITIES.

6.DEFENDANTS: SHELBY; DYERS; DEBONO; BENDERS; CARLSON; UNIDENTIFIED CORPORAL #1. SEE PARAG
APH 33. DEFENDANTS FAILED TO PROTECT PLAINTIFF FROM DEFENDANT HOLMANS VERBAL ABUSE.
PLAINTIFF SEEKS $10,000 IN COMPENSATORY DAMAGES & $15,000 IN PUNITIVE DAMAGES SEPERAT
Y FROM EACH INDIVIDUAL DEFENDANTS. INSERT SENTENCES #4 & #5 FROM PARAGRAPH 69. COUN
33

7.DEFENDANTS: HULL; LOFTIS; SEE PARAGRAPH 14; DEFENDANTS FAILED TO PROTECT PLAINTIFF FROM M
TPLE INSTANCES OF [redacted] EXCESSIVE FORCE PERPETRATED IN THEIR PRESENCE BY DEFEND
HOLMAN. PLAINTIFF SEEKS $50,000 IN COMPENSATORY DAMAGES & $150,000 IN PUNITIVE DAMAGES
FROM DEFENDANT LOFTIS IN HIS INDIVIDUAL CAPACITY. PLAINTIFF SEEKS $15,000 IN COMPENS
ORY DAMAGES & $50,000 IN PUNITIVE DAMAGES FROM DEFENDANT HULL IN HIS INDIVIDUAL C
ACITY. INSERT SENTENCES #4 & #5 FROM PARAGRAPH 69. COUNT 34

8.DEFENDANTS: LOFTIS; ALLEN; UNKNOW DEPUTIES #1 & #2. SEE PARAGRAPH 44. PLAINTIFF SEEKS $50,00
N COMPENSATORY DAMAGES & $150,000 IN PUNITIVE DAMAGES SEPERATELY FROM DEFENDANTS LOF
ALLEN IN THEIR INDIVIDUAL CAPACITIES. PLAINTIFF SEEKS $15,000 IN COMPENSATORY DAMAG
$50,000 IN PUNITIVE DAMAGES SEPERATELY FROM DEFENDANTS UNKOWN DEPUTIES #1 & #2 IN THEI
NDIVIDUAL CAPACITIES. INSERT SENTENCES #4 & #5 FROM PARAGRAPH 69. COUNT 35

9.DEFENDANTS: LOFTIS; HOLMAN; UNKNOWN DEPUTIES #3, #4 & #5. SEE PARAGRAPHS 56 & 57. DEFE
ANTS SHIRKED THIER SPECIAL RELATIONSHIP DUTIES & FAILED TO PROTECT PLAINTIFF
FROM EACH OTHER. PLAINTIFF SEEKS $50,000 IN COMPENSATORY DAMAGES & 150,000 IN PUNIT
E DAMAGES SEPERATELY IN INDIVIDUAL ACCOUNTS. INSERT SENTENCES #4 &
FAILURE TO REPORT FROM PARAGRAPH 69. COUNT 36
0. ALL DEFENDANTS IN THE SUBSEQUENT COUNTS WHERE AT ALL TIMES RELEVANT IN A SPEC
L RELATIONSHIP WITH PLAINTIFF.

1.DEFENDANTS: COX; AL-WOSARI; HULL. FAILED TO REPORT DEFENDANT ALLENS USE OF EXCES
VE FORCE IN KEEPING PLAINTIFF IN TOO TIGHT HANDCUFFS FOR APPROXIMATELY SEVEN
HOURS & SUBJECTING PLAINTIFF TO CREUL & UNUSUAL PUNISHMENT. COUNT 38

2.PLAINTIFF SEEKS $25,000 IN COMPENSATORY DAMAGES & $80,000 IN PUNITIVE DAMAGES FROM
EACH DEFENDANT SEPERATELY & IN THEIR INDIVIDUAL CAPACITIES. INSERT SENTENCES
#5 OF PARAGRAPH 69. COUNT 39.

3.DEFENDANTS: DEFENDANT BAILEY; SEE PARAGRAPH 28 SENTENCES #2-#5. DEFENDANT BAILEY FAI
D TO REPORT PLAINTIFFS ALLEGATIONS OF STAFF ASSAULT. PLAINTIFF SEEKS $5000 IN CO
MPENSATORY DAMAGES & $25,000 IN PUNITIVE DAMAGES FROM DEFENDANT IN
HER INDIVIDUAL CAPACITY. INSERT SENTENCES #4 & #5 OF PARAGRAPH 69. COUNT 40

4.DEFENDANTS: COX; SEE PARAGRAPH 17 SENTENCES #8-#10; ALLEN; SEE PARAGRAPH 15 SENTENCES #4 & #5;
5-#7 & PARAGRAPH 16 SENTENCES #3-#5; AL-WOSARI; SEE PARAGRAPH 15 SENTENCES #4 & #5. PLAINTIFF SEEKS $5000 IN
HULL; SEE PARAGRAPH 14 & PARAGRAPH 15 SENTENCES FROM DEFENDANTS SEPERATE
COMPENSATORY DAMAGES & $25,000 IN PUNITIVE DAMAGES OF PARAGRAPH 69. COUNT
IN THEIR INDIVIDUAL CAPACITIES. INSERT SENTENCES #4 & #5

5.DEFENDANT: LOFTIS; PARAGRAPH 14; PARAGRAPH 43 SENTENCES #B & #C; PARAGRAPH 44; PARA
PH 45 SENTENCES #1 & #2; PARAGRAPH 50 & PARAGRAPH 67. DEFENDANT LOFTIS WAS PRE
NT FOR ALL THREE(3) ASSAULTS AS WELL AS THE CRUEL & UNUSUAL PUNISHMENT PLAINTI
WAS SUBJECTED TO BY DEFENDANT ALLEN. HOWEVER DEFENDANT LOFTIS REPORTED NOTHIN

6.PLAINTIFF SEEKS $150,000 IN COMPENSATORY DAMAGES & 400,000 IN PUNITIVE DAMAGE
FROM DEFENDANT IN HIS INDIVIDUAL CAPACITY. INSERT SENTENCES #4 & #5 FROM PARAG
H 69. COUNT 42.

7.DEFENDANTS: WAYNE COUNTY; FAILURE TO TRAIN ITS EMPLOYEES ON WHAT CONSTITUTE
STAFF ASSAULT & WHEN TO REPORT IT. FURTHERMORE WAYNE COUNTY HAS FAIL TO PRO
DE INMATES WITH AN AVENUE TO SAFELY REPORT STAFF ASSAULT. PLAINTIFF NOTES
THAT THERE ISNT ONE SENTENCE IN THE WCSO(ADF) INMATE HANDBOOK ABOUT STAFF
ASSAULT OR REPORTING STAFF ASSAULT. COUNT 43.

8.PLAINTIFF SEEKS $1,000,000 IN COMPENSATORY DAMAGES FROM DEFENDANTS.

COUNT 9'S SUBSTANTIVE & PROCEDURAL DUE PROCESS VIOLATIONS
99. RIGHT TO BE FREE FROM THE USE OF EXCESSIVE FORCE; RIGHT TO NOT BE GRA[redacted]
ASSAULTED WHILE FULLY RESTRAINED & SUBDUED; [redacted] SEE PARAGRAPH 38 SENTENCE 1; RIGHT TO ADEQUATE [redacted]AL CARE;
REASONABLE SAFETY; SEE PARAGRAPH 38 SENTENCE 2. RIGHT TO BE FREE FROM THE ARBITRARY & CAPRICIO[redacted]ERCISE OF
PARAGRAPH 38 SENTENCE 2. RIGHT TO BE FREE FROM [redacted]TALIATION
GOVERNMENTAL POWER; SEE PARA[redacted]; RIGHT TO BE FREE FROM [redacted]RARY &
RIGHT TO BE FREE FROM UNREAS[redacted] SEIZU[redacted]RIGHT TO EQUAL PROTECTION OF THE
CAPRICIOUS EXERCISE OF GOVE[redacted]AL PO[redacted]
LAWS; SEE PARAGRAPH 38 SENTENCE 4.

COUNT 11'S SUBSTANTIVE & PROCEDURAL DUE PROCESS VIOLATIONS
100. RIGHT TO BE FREE FROM UNREASONABLE RESTRAINT; RIGHT TO BE FREE FROM [redacted] ARBITR-
ARY & CAPRICIOUS EXERCISE OF GOVERNMENTAL POWER; RIGHT TO BASIC HUMAN NECESSITIES; SEE PARAGRAPH 43 SENTENCE 1; RIGHT TO ADEQUATE HEALTH CARE; SEE PARAGRAPH 43 SENT-
ENCES #2-#4.

101. PLAINTIFF ASKS THIS COURT TO ADD COST & ATTORNEY FEES BE ADDED TO ALL PRAYERS FOR RELIEF. PLAINTIFF ALSO ASKS THAT ANY ISSUES INFERRED FROM THE PLEADINGS BUT NOT RAISED BE ATTRIBUTED TO PLAINTIFF'S PRO SE & THAT ALL AFORMENTIONED ISSUES BE RAISED BY THIS COURT. PLAINTIFF WISHES TO PROCEED IN FORMA PAUPERIS IN THIS MATTER HOWEVER PLAINTIFF ASKS IF HE'S GRANTED PAUPER STATUS IN MARTEZ DWIGHT McKEE v. WAYNE COUNTY SHERIFFS, ET AL. CASE NO. 2:24-CV-13370-MFL-PTM THAT PLAINTIFFS STATUS AS A PAUPER IN THAT ACTION BE EXTENDED TO INSTANT ACTION. IF NOT PLAINTIFF ASKS THE COURT TO ORDER ITS CLERK TO ISSUE PLAINTIFF ALL REQUIRED DOCUMENTS TO PROCEED IN FORMA PAUPERIS.

GROSS NEGLIGENCE
102. DEFENDANTS: ALLEN, COX, HULL & AL WOSARI. FOR LEAVING PLAINTIFF IN HANDCUFFS FOR HOURS WITH A MENTALLY ILL INMATE. COUNT 4.

STATE CHARGES
ASSAULT & BATTERY
103. DEFENDANTS: ALLEN; HORTON; HOLMAN; LOFTIS; UNKNOW DEPUTIES #'S 3,4,5 & 6. PLAINTIFF SEEKS $1,000,000 FROM ALL DEFENDANTS SEPERATELY & IN THEIR INDIVIDUAL CAPACITIES. INSERT SENTENCES #4 & #5 FROM PARAGRAPH 69. COUNT 1

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
104. DEFENDANTS: ALLEN; HORTON; HOLMAN; LOFTIS; UNKNOW DEPUTIES #'S 3,4,5 & 6. PLAINTIFF SEEKS $2,500,000 IN COMPENSATORY DAMAGES FROM ALL DEFENDANTS SEPERATELY & IN THEIR INDIVIDUAL CAPACITIES. INSERT SENTENCES #4 & #5 FROM PARAGRAPH 69. COUNT 2.

MISCONDUCT IN OFFICE
105. DEFENDANTS: ALLEN; WASHINGTON; DUNLAP; LYNCH; FADLALLAH; DENNIS; ACERO; HORTON; HOLMAN; COX; THOMAS; UNKNOWN #'S 3,4,5 & 6; NURSE LOHING & WCSO INTERNAL AFFAIRS. COUNT 3.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE & CORRECT.

Martez McKee X EXECUTED ON JANUARY 13, 2025

FOOTNOTES

1. PAGE#[redacted] PARAGRAPH[redacted] SENTENCE#[redacted]: INSERT "HULL."
2. PAGE #4 PARAGRAPH#11 SENTENCE #3: INSERT "HULL."
3. PAGE #4 PARAGRAPH #13 SENTENCE #1: INSERT "HULL."
4. WAYNE COUNTY JAIL (ADF) INMATE RULES & REGULATIONS. UPDATED 1/20/2024
5. HENSLEY v. GASSMAN, 693 F.3[redacted](6TH [redacted]).(QUOTING HOOKS V. HOOKS, 771 F2d. 935 943-44 (6TH CIR. 1985).
6. BAZZI v. CITY OF DEARBORN, 658 F.3d 598, 602 (6TH CIR 2011)
7. TWOMBLY, 550 U.S. AT 565 (RECOGNIZING THAT ALLEGATIONS OF CONSPIRACY MUST BE SUPP-ORTED BY ALLEGATIONS OF FACT THAT SUPPORT A "PLAUSIBLE SUGGESTION OF A CONSPIRACY" NOT MERELY A "POSSIBLE" ONE); FIEGER v. COX, 524 F3d 770, 776 (6TH CIR. 2008); SPADAFORE v. GARDNER, 330 F3d. 849, 854 (6TH CIR. 2003); GUTIERREZ v. LYNCH, 826 F2d. 1534, 1538 (6TH CIR. 1987)
8. PAGE 4 PARAGRAPH 13 SENTENCE 3: "SHUT THE FUCK UP! YOUR NOT RUNNING SHIT WERE DISCIPLINING YOU.
9. IQBAL, 556 U.S. AT 676
10. PEATROSS v. CITY OF MEMPHIS, 818 F3d 233, 241 (6TH CIR. 2016)
11. SHEHEE v. LUTTRELL, 199 F3d 295, 300 (6TH CIR. 1999)
12. PEATROSS, 818 F3d AT 242
13. MONELL v. DEP'T OF SOC. SERVS. OF CITY OF NEW YORK, 436 U.S. 658, 690, 98 S.CT. 2018, 56 L.Ed. 2d 611 (1978)
14. MONELL, 326 U.S. AT 691
15. ROELL v. HAMILTON CNTY. 870 F.3d 471, 487 (6TH CIR. 2017)
16. MONELL, 436 U.S. AT 692
17. THOMAS v. CITY OF CHATTANOOGA, 398 F.3d. 426, 429 (6TH CIR. 2005); PEMBAUR v. CITY OF CINCINNATI, 475 U.S. 469, 480, 106 S.CT. 1292, 89 L.Ed 2d 452 (1986).
18. VEREECKE v. HURON VALLEY SCHOOL DIST. 609 F.3d 392, 404 (6TH CIR. 2010)
19. GRAHAM EX REL. EST OF GRAHAM v. CNTY OF WASHTENAW, 358 F3d. 377, 383 (6TH CIR. 2004) (QUOTING GARNER v. MEMPHIS POLICE DEP'T, 8 F.3d 358, 364 (6TH CIR. 1993)
20. GREGORY v. CITY OF LOUISVILLE, 444 F 3d 725, 752 (6TH CIR. 2006) (QUOTING BRYAN CNTY. BD. OF COMM'RS v. BROWN, 520 U.S. 397, 407 (1997)
21. DESHANEY v. W[illegible]EBAGO COUNTY DEP'T OF SOC. SERVS., 489 U.S. 18[illegible], 200-01 [illegible] S.CT. 998, 103 L.Ed 2d 249 (1989)
22. SEXTON, 18 F.4TH AT 187 (QUOTING LIPMAN v. BUDISH, 974 3d 726, AT 742 (6TH CIR. 2020).
23. SEXTON, 18 F.4TH AT 187
24. A PLAINTIFF MUST CREATE A GENUINE DISPUTE OF MATERIAL FACT THAT (1) [THEY] COMPLAINED THE HANDCUFFS WERE TOO TIGHT; (2) THE OFFICER IGNORED THOSE COMPLAINTS; & 3 THE PLAINTIFF EXPERIENCED "SOME PHYSICAL INJURY" RESULTING FROM THE HANDCUFFING." HUGHEY, 3 F.4TH AT 289 (QUOTING MORRISON, 583 F.3D AT 401).

October 24th around 4 to 5:30 Pm I refused to go into the room Because it was shit N Piss in there so I kame out the dayroom and went on the desk to get a sergeant down and was tased 4 times and Beat By 15 to 20 deputies. I declare under Penalty of Perjury that the foregoing is true & Correct

Damarius Smith

EXHIBIT F

Executed on 12-22-24 Damariussmith
Signature

I [redacted] WAS ASSaulTed by SgT. HolMaN ON 4 Adam The ~~who~~ Hole I' PuT The PaPPer ON The Door TO use The bathroom I heard AloT'Ve FooTSTePs & SGT. HolMaN OPeNed My Door And start riPiNg the PaPPer DoWN I Pulled MY PaNTS UP and walked UP TO tell him I was using the restroom he ThEN Punched Me IN The Face I Fell back he entered My room AND started TO Beat Me UP I Shielded My Face TO AVoid The hiTS I was scared Powerless TO DeFeNd MySelf I Was violated Abuse & Neglected I Tried To write A grevence And A Procecuter form They refuse To give me one I wanna file for A law Suit Against Wayne county for Allowing [illegible] to happen to Me NOV 11/24 APPoxiMaTely 11:00 11:30

I Declare under PeNalTy of PurJury That The Foregoing IS True & Correct executed ON Dec 12/12/24 x Adam A

**Exhibit A**

I [redacted] got assaulted by Sergeant Holman on 2 different occassions he slapped me in my cell on Ward 2A Cell 16 and on October 29 Unit 4A around [illegible] at [illegible] 7 oclock he broke my nose

I Declare under penalty of perjury that the foregoing is true and correct

Executed on

X Dominic Hudson

12/22/24

EXHIBIT E

Charles M. Hebestrait
196481 (MDOC)
2024-010665 (WCJ)

EXHIBIT D(1 OF 2)

On 11-3-24 while on the Fourth Floor in the Wayne County Jail unsure of the exact wing, I was in Disciplinary Segregation awaiting adjudication on a infraction of jail rules. Sgt Hulman (aka Black Beard) passed on rounds for after noons and I drew his attention. Capture-ing his ~~att~~ attention, I asked for paper, pencils, grievance forms, medical kites, and where the jail rules were posted on prohibited behavior, I also asked him where a copy of my alleged infraction was to the removal of me from general population to disciplinary segregation. Informing him that such situation triggered the Wolff protections. He said he would get it together.

Several hours later after frequenting the unit several times in the inner lude, he was there, ignoring me, and I yalled "you a bitch": He was exiting the unit my cell was rate by the unit entry door. He heard me along with 4 other officers They approached my cell. opened my door. Entered it. Saying in a irate scream (to Sgt Hulman)

EXHIBIT D (2 OF 2)

get on your bunk At that point he said "you just a punk ass white boy from Taylor" He was spiting and pointing his fingure at me. I asked him to get his fingure out of my face. He was in my cell. He said "I can put my fingure in your face any time I want" He then spit and touched me. I objected that you can not enter a cell with out some provocation or necessity and without a camera. He said he could do what ever he wants. He then said get against the wall and forced me into the back of the cell where I was pinned. He then scattered and through my legal documents all about and was pushing me frisking me, violently cupping my scrotum and injuried my hydroceals. After about five minutes they retreated. I voiced a complaint to Mrs Record MH and staff seeking to make out an assault complaint. I reported it to Wade 11-18-24. I reported it to Sgt Shehan 11-6-24 and again 11-19-24 I declare under penalty of perjury that the Two page Foregoing is true and correct executed on 12-12-24 Charles [signature]

Javonte Childs

2023002895

Sgt holeman

2024

nov 21st in betw[redacted]10:[redacted] 11:00 Approximately I was outside my cell I was walking and I seen mr. McKee on Lockdown when I Looked at his face he had a swollen black EYE with blood in it. I Asked Him what happened to his EYE. He told me sgt. holman Attacked him [redacted] on nov.20.2024 while he was allready handcuffed.

I felt at odd's I felt that it was wrong for me to have to Look at mr. McKee with a black EYE. I felt that I would Have to be cautous with Every Little move that I make with dep's Around cause I am Afraid of being Attacked for no reason.

I Declare under penalty of perjury that the foregoing is true & correct

x [signature]

EXECuted on 12.18.2024

EXHIBIT C

Javonte Childs
2023002895

ON NOV. 21, 2024 Between The times of 11:00 & 12:00 [illegible]

mr. mckee asked me to ask sgt. Carlson if he could have his tablet to write a grievance. sgt. carlson told me inmate mckee couldnt have his tablet because he was on displenary status. I found this odd because Every inmate thats on disciplenary status is usually Aloud to have their tablets.

in my Opinion I felt staff members were Just Retaliating Against mr. McKee for reporting a staff assault.

I Declare under penalty of Perjury That the foregoing is True & Correct

EXHIBIT B

X [signature]

EXECuted ON 12•18•2024

MAR[illegible] DWIGHT MCKEE
2024-0000-3589
WAYNE COUNTY (ADF)

Inmate Name, Inmate Identifier
P.O. Box 247
Phoneix, MD 21131



Metroplex MI 480 ZIP
FRI 17 JAN 2025 PM

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
OFFICE OF THE CLERK
THEODORE LEVIN UNITED STATES COURTHOUSE
231 WEST LAFAYETTE BLVD. - ROOM 564
DETROIT, MICHIGAN 48226

OFFICIAL BUSINESS